### TAPPAN, COLLECTOR, v. MERCHANTS' NATIONAL BANK.

1. Shares of stock in the National banks are personal property, and though they are a species of personal property which, in one sense, is intangible and incorporeal, the law which created them could separate them from the person of their owner for the purpose of taxation, and give them a *situs* of their own.

2. The forty-first section of the National Banking Act of June 3d, 1864— which in effect provided that all shares in such banks, held by any person or body corporate, may be included in the valuation of the personal property of such person or corporation in the assessment of taxes im-

posed under State authority, at the place where the bank is located, and not elsewhere—did this.

3. This provision of the National Banking Act became a law of the property, and every State within which a National bank was afterwards located acquired jurisdiction, for the purposes of taxation, of all the shareholders of the bank, both resident and non-resident, and of all its shares, and power to legislate accordingly.

4. Nothing in Article IX, in the constitution of Illinois, of 1848, and which was still existing in 1867, prevented the legislature of the State from providing for the taxation of the owners of shares of the capital stock of a National bank in that State, at the place, within the State, where the bank was located, without regard to their places of residence.

5. The act of the said legislature, passed June 13th, 1867, so providing, was valid under the said constitution.

APPEAL from the Circuit Court for the Northern District of Illinois, in which court the Merchants' National Bank of Chicago—a bank incorporated under the "Act to provide a National currency," &c., approved June 3d, 1864,* and having its banking-house and carrying on its operations of discount and deposit in the town of *South Chicago, Cook County*, Illinois—filed a bill against one Tappan, collector of county and municipal taxes, *in the said town of South Chicago, Cook County*, to enjoin his collection of such taxes upon *any* of the shares of stock in the said bank, assessed under a statute of Illinois, passed June 13th, 1867.

Some shares of the bank were held by persons resident in the said town of South Chicago, Cook County, where, as already said, the bank itself was situated, and where Tappan, the collector of taxes for that town, resided; but many were held by persons who, though residing in Illinois, did not reside in the town of South Chicago or in the county of Cook at all, but resided out of both; and many were held by persons who did not reside in the State of Illinois at all, but resided in other States altogether.

The grounds upon which the bill was filed were apparently that, under the constitution of Illinois, the taxes were not validly laid on the residents of the State who resided out of the town of South Chicago and out of the county of Cook;

---

* 13 Stat. at Large, 99.

that therefore, under that constitution, which required uniformity of taxation, in respect to persons and property within the jurisdiction of the body imposing the same, there were no taxes laid on the shares of any persons resident *in* the town of South Chicago or in the county of Cook; and of course therefore no taxes on any shareholders resident anywhere in Illinois; and as the act of Congress authorizing a taxation by the State of shares in the National banks, owned by persons who were not residents of such State, declared that there should be no tax imposed on *them* which was not imposed on residents of the State, there was no tax laid on any shareholders anywhere.

The whole matter, it is thus obvious, turned upon the validity of the tax laid under the State act of June 13th, 1867, upon the shares of residents of Illinois who resided out of Cook County and out of the town of South Chicago.

The case, as respected the constitution of Illinois, the State act of June 13th, 1867, laying the tax, and the provisions of the National Banking Act, or, to call it by its title, the "Act to provide a National Currency," &c., was thus:

The constitution of Illinois (adopted A.D. 1848) ordains—

### "ARTICLE IX.

"SECTION 2. The General Assembly shall provide for levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his or her property, such value to be ascertained by some person or persons to be elected or appointed in such manner as the General Assembly shall direct and not otherwise.

"SECTION 5. The corporate authorities of counties, townships, school districts, cities, towns, and villages, may be vested with power to assess and collect taxes for corporate purposes, such taxes to be *uniform in respect to persons and property*, within the jurisdiction of the body imposing the same. And the General Assembly shall require that all the property within the limits of municipal corporations, belonging to individuals, shall be taxed for the payment of debts contracted under authority of law."

This provision of fundamental law being in force in Illi-

nois, Congress passed, June 3d, 1864, the "Act to provide a National currency,"* already mentioned. This act, after providing for the formation of associations for the purpose of banking, declares:

"SECTION 12. The capital stock of any association formed under this act shall be divided into shares of $100 each, and be deemed *personal property and transferable on the books of the association.*"

"SECTION 40. The president and cashier of every association, shall cause to be kept at all times, a full and correct list of the *names and residences of all the shareholders in the association,* and the number of shares held by each; . . . and such list shall be subject to the inspection of *all the officers authorized to assess taxes under State authority.*

"SECTION 41. Nothing in this act shall be construed to prevent all the shares in any of the said associations held by any person or body corporate from being included in the valuation of the personal property of such person or corporation in the assessment of taxes imposed by or under State authority,'*at the place where such bank is located and not elsewhere;* but not at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State."

Subsequently to the passage, by Congress, of this National Banking Act, the State of Illinois passed the act of June 13th, 1867, under which the tax now resisted was laid.

It enacted:

"No tax shall be assessed upon the capital of any bank or any banking association, organized under the authority of this State, or organized under the authority of the United States; and located within this State.

"But the *stockholders* in such banks or banking associations *shall be assessed and taxed* on the value of their shares of stock therein in the county, town, or district where such bank or banking association is located, and not elsewhere, *whether such stockholder reside in such town, county, or district, or not,* but not at any greater rate than is or may be assessed upon other moneyed capital in the hands of individuals in this State."

---

* 13 Stat. at Large, 102.

Before the passage of the act just above quoted, question had arisen as to the meaning in the forty-first section of the National Banking Act of the words "at the place where the bank is located." Some courts, like those of Maine, supposed that Congress meant that the shares should be assessed in and for the benefit of the taxing district.* Other courts, like those of Pennsylvania and Massachusetts,† were of a different opinion, holding that the expression meant the State and not the taxing district. Accordingly Congress, by an act of February 10th, 1868, enacted :‡

" That the words '*place where the bank is located and not elsewhere,*' in section 41 of the 'Act to provide a National currency,' approved June 3d, 1864, shall be construed to mean '*the State within which the bank is located.*' And the legislature of each State may determine and direct *the manner and place* of taxing all the shares of National banks located within said State, subject to the restriction that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State. And provided always, that the shares of any National bank owned by non-residents of any State *shall be taxed in the city or town where said bank is located, and not elsewhere.*"

The bill filed by the bank, after setting out the facts of non-residence, &c., already stated, and the violation of the Constitution in levying the tax complained of, and a threat of the collector to sell the stock of the bank, if the taxes claimed were not paid, alleged, by way of giving a jurisdiction in equity, that the shareholders refused to pay the taxes and forbade the payment of them by the bank, and threatened a multiplicity of suits against the bank in case *it* paid them, or in case it deducted the amount thereof from any dividends upon the stock; that if the collector sold the stock irreparable damage would be done to the stockholders; that the bank was the trustee of its stockholders, and as such

* Opinions of the Justices of the Supreme Court, 53 Maine, 594.

† Markoe *v.* Hartranft, 6 American Law Register, N. S. 490; Austin *v.* The Aldermen, 14 Allen, 364.

‡ 15 Stat. at Large, 84.

entitled to protect their interests; and that a sale of their stock would prejudice the bank in the public mind, and work damage to it incapable of remedy at law.

The court below on demurrer to the bill for want of equity,—disregarding the technical objection (for which *Dows* v. *The City of Chicago**\* was cited as authority), that the bank had no power to interfere in the way in which it had done, in behalf of its stockholders,—and considering that the law of Illinois laying the tax was in violation of its constitution, decreed an injunction. From that decree this appeal was taken.

*Mr. M. W. Fuller, in support of the decree:*

1. It will be admitted by opposing counsel, that the authorities of Cook County had no jurisdiction for the purposes of taxation over the person of any one who lived not in Cook County, but who lived out of it, in a different county; and that any tax laid by such authorities on that person must be void. Now, the act of June 13th, 1867, enacts "that no tax shall be assessed upon the capital of any bank," but that the *stockholders* in such banks "shall be assessed and taxed on the value of their shares of stock therein." The act relieves the capital—the property—of the bank from all tax laid by the authorities of the place where that capital, property, or bank is, and lays it on the *stockholder* wherever he may be. It forbids a tax *in rem* and establishes a tax *in personam.* Now, so far as respects stockholders in Cook County, who are within the jurisdiction of the authorities of that county for the purposes of taxation, this is lawful. Is it so under the constitution of the State in regard to those who do not reside in Cook County, but reside out of it and in other counties of the State? We think that it is not.

Concede—as is probably true—that personal property having visible, tangible, and bodily form (as *ex. gr.*, cattle), is taxable in the place where it permanently is, the concession does not help the validity of this tax. In the first place it

---

\* 11 Wallace, 108.

often happens that the capital of a bank is not at the place where the banking-house is situated, and where the operations of the bank are carried on. Many banks have their money largely deposited in distant places. Especially is this true of banks in the West dealing much in exchange. Their funds are necessarily on deposit in Eastern cities. But independently of this, shares of stock in a corporation represent an interest quite different, and separated from the capital stock of the corporation; that is to say, the real and personal property owned by the corporation. What is a share of stock in a bank? Nothing but a right to a dividend of profits as they are declared, and to a share of the effects of the bank if it should ever be wound up. Now, such a right can have no *situs* save at the domicile of the shareholder. Since the great case of *The State Tax on Foreign-held Bonds,* so recently decided by this court,* where it was held that a tax by a State on bonds given by her citizens, could not be levied on and retained from the interest of the bonds when they were owned by persons out of the State, and so held for the exact reason that *choses in action* followed the persons of their owner, it is unnecessary to refer to those numerous decisions in State courts which have adjudged that it is not within the power of a State legislature to cause a non-resident shareholder to pay taxes upon the value of his shares.†

We assume, therefore, that shares of stock owned by residents in other counties of Illinois than Cook County, are not in any sense situated in Cook County.

Now, to apply these principles. Congress has no power to authorize a violation of the constitution of a State in the assessment and collection of taxes for State and local purposes. The National Banking Act of June 3d, 1864, cannot have meant to do this.

---

* 15 Wallace, 319.

† Union Bank *v.* State, 9 Yerger, 490; Conwell *v.* Connersville, 15 Indiana, 150; Savings Bank *v.* Nashua, 46 New Hampshire, 398; Dwight *v.* Mayor, 12 Allen, 322; Austin *v.* Aldermen, 14 Allen, 364; McKeen *v.* Northampton, 49 Pennsylvania State, 519.

Now, what did the constitution of Illinois, Article 9, declare? It declared that all taxes for corporate purposes shall be " uniform in respect to persons and property within the jurisdiction of the body imposing the same."

" To render taxation uniform," says a text-writer of the first class,* " two things are essential. The first is, that each taxing district confine itself to things within its limits." ... " Within these districts the rule of absolute uniformity must be applicable."

But when a resident of La Salle County, Illinois, owning the whole stock perhaps of half a dozen banks in Cook County, and owning nothing besides, is not taxed in La Salle County at all, how is the rule of uniformity prescribed by the constitution of Illinois observed? Yet under the statute of June 13th, 1867, this is the sort of taxation which does occur. For that statute provides no mode of assessing the shares of residents in the State at the place where they reside. In *Trustees* v. *McConnell,*† the Supreme Court of Illinois said that under the provision of the constitution which we have referred to, the legislature " would have no power to exempt from taxation one species of personal property while it collected a tax from another within the same jurisdiction." But when you give to the county of Cook the proceeds of taxation of shares owned by a resident of La Salle, do you not exempt the latter in the county where he lives, and tax his co-residents in that county to make up the deficiency? Is this taxation uniform in respect to persons within the limits of such county? We submit that it is not.

There being then no valid law in force in this State, by which the shares of stock in National banks, belonging to residents of the State, can be taxed, the shares owned by non-residents cannot be taxed, because the proviso to section forty-one of the act " to provide a National currency," of June 3d, 1864, expressly declares that there shall be no tax

---

* Cooley, Constitutional Limitations, 496.

† 12 Illinois, 140.

imposed upon non-residents that is not imposed upon residents of the State.*

It ought, perhaps, to be observed, that when the act of June, 1867, was passed, controversy had arisen as to the meaning of the words (whose meaning certainly is not perspicuous) in the provisos to the forty-first section of the law of Congress, that the shares should be assessed "at the place where the bank is located." The framers of the State law doubtless supposed Congress to have required the shares to be assessed in and for the benefit of the taxing district of the bank's location; as courts of high respectability had supposed before them.

2. The technical objection that the bank cannot interfere in equity, in behalf of its shareholders, is without foundation. The bank occupies the position of a stakeholder. It is the custodian of the dividends of the shareholders. The shareholders insist that all the dividends be paid to them. The collector demands that a part be paid to him. The bank asserts and the demurrer admits that the shareholders have given notice to the bank that if it pay these taxes suits will be commenced at once against it. At the same time if it does not pay them the collector threatens to sell the shares, and so to get the taxes. It is obvious that the latter course, if taken, would lead to further and harassing litigation, working that kind of injury to the corporation which, because the law affords no such beneficial and complete remedy for it as the nature of the case requires, may be deemed irreparable. *Dows* v. *The City of Chicago* is not applicable to such a case.

*Mr. J. K. Edsall, Attorney-General of Illinois, contra,* argued the case fully on principle and authority; citing among other cases, one decided in February, 1873, *First National Bank of Mendota* v. *Smith, Collector,*† in which the law here in question was held by the Supreme Court of Illinois to be valid under the constitution of the State.

---

* Van Allen *v.* Assessors, 3 Wallace, 573.

† 5 Chicago Legal News, 253.

The CHIEF JUSTICE delivered the opinion of the court.

We are called upon in this case to determine whether the General Assembly of the State of Illinois could, in 1867, provide for the taxation of the owners of shares of the capital stock of a National bank in that State, at the place, within the State, where the bank was located, without regard to their places of residence. The statute of Illinois, under the authority of which the taxes complained of were assessed, was passed before the act of Congress, approved February 10th, 1868,* which gave a legislative construction to the words, "place where the bank is located, and not elsewhere," as used in section forty-one of the National Banking Act,† and permitted the State to determine and direct the manner and place of taxing resident shareholders, but provided that non-residents should be taxed only in the city or town where the bank was located.

The power of taxation by any State is limited to persons, property, or business within its jurisdiction.‡ Personal property, in the absence of any law to the contrary, follows the person of the owner, and has its *situs* at his domicile. But, for the purposes of taxation, it may be separated from him, and he may be taxed on its account at the place where it is actually located. These are familiar principles, and have been often acted upon in this court and in the courts of Illinois. If the State has actual jurisdiction of the person of the owner, it operates directly upon him. If he is absent, and it has jurisdiction of his property, it operates upon him through his property.

Shares of stock in National banks are personal property. They are made so in express terms by the act of Congress under which such banks are organized.§ They are a species of personal property which is, in one sense, intangible and incorporeal, but the law which creates them may separate

---

* 15 Stat. at Large, 34.                     † 13 Id. 112.
‡ State Tax on Foreign-held Bonds (Railroad v. Pennsylvania), 15 Wallace, 319.
§ 13 Stat. at Large, 102, § 12.

them from the person of their owner for the purposes of taxation, and give them a *situs* of their own. This has been done. By section forty-one of the National Banking Act, it is in effect provided that all shares in such banks, held by any person or body corporate, may be included in the valuation of the personal property of such person or corporation in the assessment of taxes imposed under State authority, at the place where the bank is located, and not elsewhere.* This is a law of the property. Every owner takes the property subject to this power of taxation under State authority, and every non-resident, by becoming an owner, voluntarily submits himself to the jurisdiction of the State in which the bank is established for all the purposes of taxation on account of his ownership. His money invested in the shares is withdrawn from taxation under the authority of the State in which he resides and submitted to the taxing power of the State where, in contemplation of the law, his investment is located. The State, therefore, within which a National bank is situated has jurisdiction, for the purposes of taxation, of all the shareholders of the bank, both resident and non-resident, and of all its shares, and may legislate accordingly.

The State of Illinois thus having had, in 1867, the right to tax all the shareholders of National banks in that State on account of their shares, it remains to consider at what place or places within the State such taxes could be assessed.

It is conceded that it was within the power of the State to tax the shares of non-resident shareholders at the place where the bank was located, but it is claimed that under the constitution of the State resident shareholders could only be taxed at the places of their residence. We have not been referred to any express provision of the constitution to that effect. There is nothing which in terms prohibits the General Assembly from separating personal property within the State from the person of the owner and locating it at appropriate places for the purposes of taxation, but it

---

* 13 Stat. at Large, 112.

is insisted that sections two and five of Article 9 of the Constitution of 1848, which was in force when the act of 1867 was passed, contain an implied prohibition.

Section two directs that "the General Assembly shall provide for levying a tax by valuation, so that every person or corporation shall pay a tax in proportion to the value of his or her property; such value to be ascertained by some person or persons to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise." Section five directs that "the corporate authorities of counties, townships, school districts, cities, towns, and villages, may be vested with power to assess and collect taxes for corporate purposes; such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same. And the General Assembly shall require that all property within the limits of municipal corporations belonging to individuals shall be taxed for the payment of debts contracted under authority of law." The corresponding provisions of the Constitution of 1870 are in substance the same.

The object of these sections is to secure uniformity of taxation. That, it is said in *Bureau Co.* v. *C. B. and Q. R. R. Co.*,* is to be regarded as the cardinal principle, the dominant idea of this article of the constitution. But uniformity in this connection is only another name for equality, for the provision is for "levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his or her property." The value of the property being ascertained, the same rate of taxation must be laid upon all.

Property is made the constitutional basis of taxation. This is not unreasonable. Governments are organized for the protection of persons and property, and the expenses of the protection may very properly be apportioned among the persons protected according to the value of their property protected.

The constitution does not undertake to fix the value of

---

* 44 Illinois, 238.

the property. Neither does it prescribe any rules by which it is to be fixed. That is left to the General Assembly, for the provision in that respect is, " such value to be ascertained by some person or persons to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise." The mode and manner in which the persons appointed to make the valuation shall proceed, are left to the discretion of the General Assembly. In fact, the whole machinery of taxation must be contrived and put into operation by the legislative department of the government.

As part of this machinery taxation districts must be created. All property within the district must be taxed by a uniform rate. If property is actually within a district it is but proper that the legislature should provide that it should be listed, valued, and assessed there. In fact, the last clause of section five, Article 9, seems to make that a duty, for it provides that the General Assembly shall require that all property within the limits of municipal corporations, belonging to individuals, shall be taxed for the payment of debts contracted under authority of law.

This power of locating personal property for the purpose of taxation without regard to the residence of the owner has been often exercised in Illinois, and sustained by the courts.* Since the adoption of the constitution of 1870, which did not enlarge the powers of the General Assembly in this particular, very extended legislation has been had with a view to such location. Thus, live stock and other personal property used upon a farm, must be listed and assessed where the farm is situated; property in the hands of agents at the place where the business of the agent is transacted; watercraft where they are enrolled: or, if not enrolled, where they are kept; the property of bankers, brokers, merchants, manufacturers, and many other classes of persons specially enumerated, at the place where their business is carried on. This became necessary in order that the burdens of taxation might be equally distributed among those who should bear them.

* City of Dunleith *v.* Reynolds, 53 Illinois, 45.

We do not understand the counsel for the appellee to dispute this power, where the property is tangible and capable of having, so to speak, an actual *situs* of its own, but he claims that if it is intangible, it cannot be separated from the person of its owner.    It must be borne in mind that all this property, intangible though it-may be, is within the State.    That which belongs to non-residents is there by operation of law.    That which belongs to residents is there by reason of their residence.    All the owners have submitted themselves to the jurisdiction of the State, and they must obey its will when kept within the limits of constitutional power.

The question is then presented whether the General Assembly, having complete jurisdiction over the person and the property, could separate a bank share from the person of the owner for the purposes of taxation.    It has never been doubted that it was a proper exercise of legislative power and discretion to separate the interest of a partner in partnership property from his person for that purpose, and to cause him to be taxed on its account at the place where the business of the partnership was carried on.    And this, too, without reference to the character of the business or the property.    The partnership may have been formed for the purpose of carrying on mercantile, banking, brokerage, or stock business.    The property may be tangible or intangible, goods on the shelf or debts due for goods sold.    The interest of the partner in all the property is made taxable at the place where the business is located.

. A share of bank stock may be in itself intangible, but it represents that which is tangible.    It represents money or property invested in the capital stock of the bank.    That capital is employed in business by the bank, and the business is very likely carried on at a place other than the residence of some of the shareholders.    The shareholder is protected in his person by the government at the place where he resides; but his property in this stock is protected at the place where the bank transacts his business.    If he were a partner in a private bank doing business at the same place,

he might be taxed there on account of his interest in the partnership. It is not easy to see why, upon the same principle, he may not be taxed there on account of his stock in an incorporated bank. His business is there as much in the one case as in the other. He requires for it the protection of the government there, and it seems reasonable that he should be compelled to contribute there to the expenses of maintaining that government. It certainly cannot be an abuse of legislative discretion to require him to do so. If it is not, the General Assembly can rightfully locate his shares there for the purpose of taxation.

But it is said to be a violation of the constitutional rule of uniformity to compel the owner of a bank share to submit to taxation for this part of his property at a place other than his residence, because other residents are taxed for their personal property where they reside. It is a sufficient answer to this proposition to say that all persons owning the same kind of property are taxed as he is taxed. Absolute equality in taxation can never be attained. That system is the best which comes the nearest to it. The same rules cannot be applied to the listing and valuation of all kinds of property. Railroads, banks, partnerships, manufacturing associations, telegraph companies, and each one of the numerous other agencies of business which the inventions of the age are constantly bringing into existence, require different machinery for the purposes of their taxation. The object should be to place the burden so that it will bear as nearly as possible equally upon all. For this purpose different systems, adjusted with reference to the valuation of different kinds of property, are adopted. The courts permit this. Thus, in a case in Illinois, involving the system adopted for the taxation of bank shares, it was said by the Supreme Court,* " in view of this legislation it must be apparent that a system of taxation for bank shares was designed peculiar to itself and independent of the general revenue laws of the State;" and the authority of the law was sustained and enforced.

---

* McVeagh v. Chicago, 49 Illinois, 329.

Again, it is said the law in question destroys the uniformity of taxation, because it provides for the collection of the taxes assessed on account of this kind of property in an unusual way. The constitution does not require uniformity in the manner of collection. Uniformity in the assessment is all it demands. When assessed the tax may be collected in the manner the law shall provide; and this may be varied to suit the necessities of each case.

Since the decree was rendered in the Circuit Court the Supreme Court of Illinois has passed upon this same question and declared the law of 1867 to be constitutional. We might have contented ourselves by acknowledging the authority of this decision, but we are willing not only to acknowledge its authority, but to admit its correctness.

We have not felt called upon to consider whether the General Assembly could, under the provisions of the act of Congress, provide for the taxation of shareholders at any other place within the State than that in which the bank is located. It is sufficient for the purposes of this case that it might tax them there.

Other questions have been discussed in the argument, and among them one which relates to the power of the bank to interfere in behalf of its stockholders in the manner which has been done. We have not deemed it necessary to pass upon any of these questions, as those already decided are conclusive of the case.

DECREE REVERSED, and the cause remanded with instructions to proceed
IN CONFORMITY WITH THIS OPINION.