C. M. ST. P. & P. R. R. CO., Petitioner

v.

GILLIS, et al., Respondents

(118 N.W. 2d 313)

(File No. 10050. Opinion filed December 7, 1962).

Dwight Campbell, Aberdeen, for Petitioner.

A. C. Miller, Atty. Gen., John P. Dewell, Asst. Atty. Gen., Joseph H. Bottum, III, Asst. Atty Gen., Pierre, for Respondents.

MANSON, Circuit Judge. This is an original proceeding in this court.

Petitioner is a Wisconsin railroad corporation. It is a common carrier of persons and property in many midwestern states, including South Dakota, where its trackage and appurtenant operating properties are distributed in and over some 744 taxing districts in 44 counties.

This proceeding is concerned with the valuation and assessment of these operating properties for ad valorem tax by the Commissioner of Revenue of the State of South Dakota and in no manner involves railroad property of the nonoperating classification, which is valued by local assessors. The principal point here at issue is the applicability of SDC 1960 Supp. 57.0334 to such operating property. This section as it now stands, was amended by Ch. 459, Laws of 1957, so as to establish a state-wide assessment factor of 60% of true and full value of all property, and the sole legal question presented by the pleadings is whether this factor relates to railway operating property.

Petitioner contends that it does, that those of the respondents whose duty it is to establish assessed valuations upon such operating property have unlawfully and unjustly discriminated against petitioner in that they have refused to apply this factor to the true and full value of such property, and that this refusal has caused such property to be valued for taxation higher than

other property of the same class owned by individual taxpayers within the state.

To the foregoing, respondents by answer allege, first, that the statutory factor of 60% aforesaid does not relate to railroad operating property and, secondly, that if the court determines otherwise, respondents would demonstrate that the imposition of the factor had, notwithstanding their view, been substantially accomplished, and that the writ would not lie.

The petition asks this court to issue its mandate to the respondents, requiring them to apply the factor of 60% provided by SDC 1960 Supp. 57.0334 to the valuation of petitioner's property and thus to assure an equality of taxation.

The 1962 valuation of petitioner's operating property by the respondent, Gillis, Commissioner of Revenue (legal successor to Director of Taxation) appears to have been initiated in conformity with SDC 57.1305. This section, headed "Assessment: when and how made" under Ch. 57.13 "RAILROAD COMPANIES", reads as follows:

"The Director of Taxation shall assess the operating property of railroads on the seventh day of July and if the seventh day of July falls on Sunday or on a legal holiday, then the following day, each year. The ownership and valuation of the assessment shall be as of the first day of May each year, and shall be made upon the main line or lines and branches thereof and all side tracks outside the limits of cities and incorporated towns within the state, separately.

"The Director of Taxation shall, in determining the true and full value of the property assessed by him, value all the property of any railroad company as a unit, but shall make due allowance for any nonoperating property.

"For the purpose of determining the true and full value of the property of any railroad company the Director of Taxation shall take into consideration the actual or mar-

ket value of the shares of stock outstanding, the actual or market value of all bonds outstanding and all other indebtedness as shall be applicable, for operating the road. In determining the market value of any such stock or indebtedness the Director of Taxation shall consider quotations for the next preceding five years; the net railway operating income of the company during the five calendar years preceding the assessment date; and the Director of Taxation may take into consideration any other information or data of any kind or nature which he may deem material in arriving at the true and full value of the property. The Director of Taxation, as an aid to this determination of value as aforesaid, may, if he sees fit, call upon the Public Utilities Commission of the state of South Dakota for any information and facts which said Commission may have concerning the property of any railroad company in this state, and it is hereby made the duty of said Public Utilities Commission to furnish such information upon request. The assessment by the Director of Taxation shall include capital stock and all other property of railroad companies, except such property as is found by the Director of Taxation to be nonoperating property as hereinbefore defined.

"If any railroad company owns or uses operating property partly within and partly without this state, the Director of Taxation shall determine the value of the entire operating property of such railroad and shall allocate or assign a part of said value to this state by the use of such factors or methods as are reasonable and equitable."

Commissioner Gillis, according to the stipulation filed herein, took some steps prior to June 18, 1962, to establish a valuation of petitioner's property, and a letter was sent to petitioner on this latter date, advising it that a "tentative valuation" of $31,100,806 had been thus ascribed to petitioner's South Dakota property, by one Douglas Misfeldt, Utilities Valuation Engineer of the South Dakota Department of Revenue. This "tentative valuation" was

reached by direct calculations which involved the use of three value elements or indices. These were:

(1) average system stocks and bonds value,

(2) average system capitalized (7%) net revenues, and

(3) depreciated system cost (figures from Public Utilities Commission)

The first two of these value indices were average values, figured over a 5-year span and constituted for the purposes of the valuation, 7.91% of the system totals, this percentage representing the amount of total system property located and taxable in South Dakota.

This "triad" was employed by Misfeldt by adding elements 1 and 2 together, by dividing the resultant aggregate by 2 and, to the average thus reached, adding 33 1/3% of the depreciated system cost.

The figure thus reached was amended following a hearing on June 27, 1962, in Commissioner Gillis' office, but the formula used to reach a new "tentative assessment" remained the same as before, and the worksheet reflects the following computation:

South Dakota allocation of average system
stocks & bonds value $16,637,852.00
South Dakota allocation of average system
net revenue capitalized (7%) $15,472,905.00
Corrected total $32,110,757.00
Divided by 2 equals $16,055,379.00
Add 33 1/3% P.U.C. depreciated cost $14,738,447.00
Tentative value $30,793,826.00

On July 25, 1962, petitioner was advised by the Office of Commissioner Gillis that the latter had established an "equalized taxable assessment" of $20,454,851. This latter figure was reached by Misfeldt by dint of the following mathematical exercises:

(a) Average of stocks & bonds value plus
net revenue capitalized $16,055,379.00
(b) Add 10% of total P.U.C. depreciated
cost $ 4,421,534.00
Total (called "adjusted taxable value") $20,476,913.00
Less "rounding-off" adjustments for appor-
tionment $ 22,062.00

"Equalized taxable assessment" $20,454,851.00

For some reason the State Board of Equalization, to whom the "equalized taxable assessment" was referred, reduced the above by $109.00—and the assessed valuation of petitioner's property finally "came to rest" on the protested figure of $20,454,742.

■ Our first task must be to determine the validity of the claim that the 60% factor does not relate to petitioner's operating property. We are unable to find any justification for the Commissioner's view in this regard. SDC 1960 Supp. 57.0334 continues the previously announced rule reading: "All property shall be assessed at its true and full value in money" and adds the succeeding words: "but only sixty per cent of such assessed value shall be taken and considered as the taxable value of such property * * ." A more inclusive term could not have been employed than the "All property * * *" which specifies the area of employment of the 60% factor. We are of the view that this statement means exactly what it says and that the term "All property" includes in its purview, the operating property of petitioner. SDC 57.1305 would seem to give warrant to this view, applying the "true and full value" rule to railway operating property. The process of taxation of such property is by SDC 57.1310 to be "at the same rates and for the same purposes as the property of individuals." Collection remedies applicable to the general field of property taxation are, by SDC 57.1311, made applicable to taxes on railroad property. These all tend to establish petitioner's position; on the other hand, we have had nothing in the way of authority which could give the Commissioner or anyone else, among respondents, warrant to deny the

applicability of this factor, and we hold that this factor is, in fact, applicable to petitioner's property.

■ Has this factor been applied? Commissioner Gillis concedes that it has not been directly applied, but suggests that his reduction of the assessment from the "tentative value" of $30,793,826 to the "taxable valuation" of $20,454,742 is a sufficiently substantial compliance to obviate the necessity to enter the writ.

Obviously the Commissioner by the terms "tentative value" or "tentative assessment" meant "true and full" value. That is the only discretionary valuation which the statute authorizes him to determine. It appears from the stipulation of the parties that this practice of designating the statutory standard of true and full value as "tentative value" in the assessment of railroad property has reoccurred each year for the past twelve years. In the circumstances and limitations of this case we must accept· that figure as the true and full value of such properties, but this should not be construed as approving the formula utilized by him.

With this determined it was then his duty to apply to it the 60% factor as directed by the legislature, which is a straightforward operation, completely ministerial in character. It is no compliance for him to substitute choice, good intentions, judgment factors, approximations or fortuitous computative result. The taxpayer is entitled to know that his taxable valuation represents 60% of the true and full value of his property. The diminution process utilized by the Commissioner, which we reject, resulted in an assessment which is actually 66% of the true and full value. If he had applied the statutory 60% factor the taxable value of these properties would have been, and is $18,476,295.

Accordingly our judgment must be that the Commissioner use this figure in making his pro-rata distribution of the assessed valuation of petitioner's operating property to the various taxing units or subdivisions of the state. The mandatory writ of this court will issue to that effect. No costs to be taxed.

All the Judges concur.

MANSON, Circuit Judge, sitting for SMITH, J., disqualified.