CHICAGO AND NORTH WESTERN RAILWAY COMPANY,
Appellant

v.

GILLIS et al., Respondents

(159 N.W.2d 293)

(File No. 10469.   Opinion filed  June 3, 1968)

**George M. Hollander,** Chicago, Ill., **M. T. Woods,** Sioux Falls, for appellant.

**Frank L. Farrar,** Atty. Gen., **John P. Dewell,** Asst. Atty. Gen., Pierre, for respondents.

RENTTO, Judge.

This appeal brings before us for a second time the 1963 valuation for tax purposes of the operating railroad property of the Chicago and North Western Railway Company in the State of South Dakota as made by the Commissioner of Revenue and equalized by the State Board. Our decision in the first case is reported in 83 S.D. 144, 148 N.W.2d 581. The background of this litigation is therein extensively detailed.

That valuation was determined by the Commissioner and the board by using the following formula and figures:

```
Railroad System:
    Stock and Bonds—
        5-year average                   $161,756,000(23%)
    Capitalized value of net railway operat-
        ing income at 6 1/2%              47,102,500(6%)
    I.C.C. depreciated costs             507,672,589(71%)
                                         _____
                        Total            716,531,089
    Divided by 3 equals                  238,819,812
    Apply a 3.92% factor of road in S.D.
        (not here in dispute)                   .0392
                                         _____
                                         $  9,361,737
                                                    60%
                                         _____
                    Taxable Value        $  5,617,042
```

This was approved by the court on the first trial.

In the opinion deciding that case, at page 590 we stated that "the trial court gave insufficient consideration to the evidence of obsolescence in accepting the I.C.C. cost at its stated figure without deduction of any obsolescence, resulting in a value in excess of full and true value." We further held that the court did not otherwise err in refusing to reduce the railroad's valuation for tax purposes. The cause was remanded to the trial court with directions to make findings of fact which would include the full and true value of North Western's operating property and conclusions of law on the record then before the court and within the guidelines of that opinion and enter an appropriate judgment.

When the matter came on to be heard on remand the trial court modified its former decision by making additional Findings of Fact XI, XII and XIII and an additional Conclusion of Law all as proposed by the Commissioner. In attempting to carry out the mandate of this court the trial court in Finding XI determined obsolescence in this manner:

"That 16.46% of the stated Interstate Commerce Commission cost depreciated, represents obsolescence of the Appellant's systemwide properties."

Accordingly in its revaluation it deducted the obsolescence so determined from the I.C.C. original cost depreciated, but otherwise utilized the same formula and figures that it had on the first trial. By applying the 60% factor as provided in SDC 1960 Supp. 57.0334, the railroad's operating properties in South Dakota were determined to have a taxable value of $4,962,470 for the year 1963. Judgment to this effect was entered.

North Western's appeal from this judgment assigns the adoption of Finding of Fact XI as error claiming there is no basis for using 16.46% as a factor for or representing obsolescence. This same objection challenges Findings XII and XIII and the additional Conclusion of Law, since they are all predicated on Finding XI.

The North Western has lines in 9 states, including South Dakota. When such is the situation our statute requires that the Commission shall determine the value of the entire operating property of such railroad and shall allocate or assign a part of said value to the state by use of such factors or methods as are reasonable and equitable. SDC 57.1305. In other words, the value that we utilize for tax purposes is a proportionate part of the systemwide value. This is generally known as the unit method of assessment.

The directions in that statute for determining the systemwide value by the Commissioner are summarized in this fashion in our prior opinion in this litigation:

"he 'shall' take into consideration (1) the market value of the stock, bonds and all other indebtedness applicable for operating the road and (2) its net railway operating income—both for the preceding 5 years. It then reads he 'may' take into consideration any other information or data of any kind or nature which he may deem material in arriving at the true and full value of the property."

No question is here presented as to requirements (1) and (2). Our problem grows out of the "may" provision in the statute.

This railroad's operations in South Dakota consist entirely of hauling freight. The passenger trains that it formerly operated here were abandoned many years ago. The evidence on behalf of the railroad was that the portions of its tracks with a traffic density of less than 500,000 revenue tons of freight per mile of line per year were considered uneconomic. Such lines are characterized as "scrap". The Commissioner does not dispute this claim and both parties seem to have accepted it as a standard of obsolescence. The issue here involved arises from their differing applications of the standard.

Plaintiff's Exhibit 22 on page 16 shows the North Western's Freight Traffic Density by states. In South Dakota it has a mileage of 1448 and in Wyoming a mileage of 288. The total mile-

age in each of these states **averages** less than the 500,000 revenue ton mile standard. These are the only states in the North Western system that **average** below that figure. The 16.46% obsolescence figure which the Commissioner proposed and the court adopted was arrived at by totaling the mileage in these states, 1,736 miles, and dividing it by 10,544, the system total mileage. This seems to us an unrealistic and arbitrary approach to the determination of obsolescence. It treats as obsolete all mileage in states which average below the 500,000 ton standard even though there is mileage in those states that exceeds the standard. And it does not take into account obsolete mileage in those states that average above the standard.

■ ■  Under our statute we levy our tax on only a proportionate amount of the railroad's systemwide value. This matter of systemwide valuation is basic in our problem. To arrive at such valuation requires that obsolescence also be determined on a systemwide basis. The formula adopted by the Commissioner and approved by the court does not do this. In fact there is no rational relationship between the percentage figure in Finding XI and the systemwide obsolescence of the railroad. It entirely ignores the systemwide aspect of the problem.

■  Page 17 of this same exhibit shows that the railroad has uneconomic mileage in each of the states in which it operates, and the percentage thereof as compared to the total mileage in each state. According to this 44.19% of the system's total mileage has a traffic density less than the 500,000 revenue ton mile standard of obsolescence. The correctness of this figure is not questioned. Since it represents the systemwide obsolescence we hold that the court should have reduced the I.C.C. cost depreciated by this amount rather than the percentage figure that it used.

The judgment appealed from is reversed with instructions to enter findings of fact, conclusions of law and a judgment in conformity to this opinion. That judgment should require respondents to apportion and certify the appropriate portions of the systemwide valuation of the North Western's operating properties

to the proper officials of the counties where its operating property is located, as by law provided.

All the Judges concur.