## APPEALS OF CHICAGO & NORTHWESTERN RAILWAY CO.

(188 N.W.2d 276)

(File No. 10852. Opinion filed June 16, 1971)

Rehearing denied July 27, 1971

**M. T. Woods, of Woods, Fuller, Schultz & Smith,** Sioux Falls, for Chicago and N. W. Ry. Co., respondent.

**Gordon Mydland,** Atty. Gen., **John Dewell,** Asst. Atty. Gen., Pierre, for the State, appellant.

RENTTO, Presiding Judge.

The litigation reported in Chicago and North Western Railway Company v. Gillis, 82 S.D. 470, 148 N.W.2d 581 and 83 S.D. 332, 159 N.W.2d 293, was concerned with the assessment for tax purposes of the railway's operating property in South Dakota as made by the commissioner of revenue. This proceeding presents only the issue of equalizing the taxable value of such property as fixed and reported by the department of revenue with the taxable value of real and personal property owned by others and locally assessed.

For the year 1964 the commissioner of revenue determined that the full and true value of the railway's operating property in South Dakota was $8,976,617. Giving effect to Ch. 459, Laws of 1957, now SDCL 10-6-33, which provides that: "only sixty per cent of such assessed value shall be taken and considered as the taxable value of such property upon which the levy shall be made and applied and the taxes computed" he determined that its taxable value was $5,385,-970. From such decision the railway appealed to the state board of equalization. That board lowered his determination of the full and true value of the property, but determined its taxable value by applying the same 60% factor.

This decision the railway appealed to the circuit court. It claimed that such valuation discriminated against it and in favor of other taxpayers whose property was assessed locally because the taxable value of their property was determined by applying a factor smaller than the statutorily prescribed 60%. The matter was presented to the trial court on a voluminous and detailed stipulation of facts supplemented by additional evidence which was cumulative to the the facts covered by the stipulation. While the appeal which is the basis of this controversy involved only the railway's taxes for the year 1964, appeals similar in form and content for the years 1965, 1966, 1967 and 1968 were timely filed in each of those years, but held in abeyance. The stipulation consolidates all of them in this proceeding for the purposes of trial and appeal.

The department of revenue pursuant to directives of the commissioner had made detailed studies and reports covering the relation of assessed values of real estate to sales or market values thereof in all of the counties of the state. See Ch. 477, Laws of 1957. These reports each cover a calendar year and are titled "Real Estate Taxable Assessment—Sales Ratio Study". Official copies of such studies for the years 1958 to 1968, both inclusive, are a part of the stipulation. The parties stipulated that said studies are accurate and fairly reflect the levels of real property assessment in the state for the years involved. It is manifest from them that as to the real property studied the taxable value has

been consistently less than the statutory 60% of assessed value, the deviations therefrom varying widely from county to county. As to the average assessment ratio of personal property in each of the counties the parties agreed that it was 60% of the true and full value.

In their stipulation the parties agreed on the full and true value of the railway's operating property for the years in question and that its taxable value was arrived at by applying the 60% factor thereto. They further agreed that if such equalization was to be made by using a factor other than the statutory 60% on a state average basis, then the statewide averages of the assessed value of other real and personal property for the years involved are: 1964—45.1%, 1965—44.9%, 1966—44.7%, 1967—43.5%, 1968—43.1%.

They also agreed that if the equalization was to be accomplished on the property in question separately in each of the counties where it was located then the ratios of assessed value of real and personal property in each of such counties to the true and full value are those contained in column 9 of Exhibits B, C, D, E and F for the years in question. As to the real estate, each of these exhibits listed in separate columns for each year involved the total assessed value, weighted average assessment ratio, and total true and full value for each of the organized counties in the state. The same was done as to personal property except that the assessment ratio was the statutory and stipulated 60%. In the same manner as to combined real and personal property, they listed the assessed value, true and full value and weighted average assessment ratio in each county. This latter is the column 9 referred to in their stipulation.

The trial court concluded that in the described circumstances it was improper to arrive at the taxable value of the railway's operating property by taking 60% of its true and full value. It held that the equalization was to be done on a county by county basis. To accomplish this it ordered the department of revenue to reduce the taxable value of the railway's operating property in each of the counties where it operated to the same proportion of full and true value

as that applied to other real and personal property therein as shown by the exhibits. These results were then to be certified to the proper officials of the counties, cities and towns involved who would correct their records and adjust the railway's taxes accordingly for the years in dispute. From a judgment to this effect the state appeals.

■ To support its contention that the state board of equalization acted properly in determining that the taxable value of such property was 60% of its full and true value the state relies on Section 2 of Art. XI of our Constitution. That provision so far as here relevant states:

> "To the end that the burden of taxation may be equitable upon all property, and in order that no property which is made subject to taxation shall escape, the Legislature is empowered to divide all property including moneys and credits as well as physical property into classes and to determine what class or classes of property shall be subject to taxation and what property, if any, shall not be subject to taxation. Taxes shall be uniform on all property of the same class, and shall be levied and collected for public purposes only."

The state urges that under this authority the legislature has put railway operating property in a separate class and points out that the taxable value of all property in that class was determined by using the 60% factor. The portion of such article which authorized the division of property into classes and required that taxes be uniform on all property of the same class was proposed as an amendment by Ch. 161, Laws of 1917 and approved at the general election held in November of 1918. Before this change constitutional uniformity as to the substantive tax burden was required as to all property.

From this basis the state proceeds to claim that by the provision of SDC 1939, Ch. 57.13, now SDCL 10-28, the legislature designated railroad operating property as a separate class of property for the purpose of taxation permitting it to be taxed at a different rate than other property. We do not so regard it. As we read that chapter it merely

enumerates the factors to be considered and the procedures available to the commissioner of revenue in determining the assessed valuation of the operating property of railroads for taxation purposes. See Chicago and North Western Railway Company v. Gillis, 82 S.D. 470, 148 N.W.2d 581.

It should be noted that this centralized manner of evaluating railroad operating property for the purpose of taxation had its genesis in §§ 50-60, Ch. 14, Laws of 1891. Before that railroads were taxed a percentage of their gross earnings. Compiled Laws 1887, §§ 1571-1576. Incidentally, that 1891 enactment also made provision for the central assessment of other public utilities whose properties did not lend themselves to local assessment. When it was adopted the classification of property for taxation purposes was violative of our constitution.

At the first session of our legislature after the 1918 amendment of Section 2, Art. XI, Ch. 109 of the Laws of 1919 was adopted. It was concerned with the assessment and taxation of moneys and credits and stated that they "shall constitute a separate class of property for the purpose of assessment and taxation". Our attention has not been directed to any equivalent declaration in any of our enactments concerning the central assessment of railroad operating property. We think it reasonable to feel that if the legislature by providing for central assessment had intended to classify such property as a separate class for taxation it would have said so. Such specific language has been used in . several acts concerning certain types of property, providing for a tax levy different than that from other property.[1]

---

1. Ch. 256, Laws of 1931 "classified real property for the purpose. of school taxation and provided a limited mill levy on agricultural land. Ch. 363, Laws of 1941 "expressly classified" the personal property of rural electric companies for the purpose of taxation and provided a gross receipts tax. Ch. 423, Laws of 1955 "expressly classified" rural telephone property for the purpose of taxation and levied a gross receipts tax. Ch. 218, Laws of 1964 "classified" unprocessed sugar beets and raw honey for the purpose of taxation and prescribed a limited mill levy rate. The first classification was apparently made pursuant to Art. 8, § 15, and the latter three under Art. XI, § 2.

If we were to assume that by providing for the central assessment of the operating property of railroads the legislature designated it as a separate class for taxation, it is indeed strange that the legislature did not prescribe a rate for its taxation separate from that for other property. It seems to us that absent such rate a separate classification would be rather meaningless. The 60% factor which the board of equalization used in determining taxable value applies to "all property" not just railroad operating property. SDCL 10-6-33.

We hold that the legislature has not put railroad operating property in a separate class either as to the factor to be used in arriving at its taxable value or as to the rate of tax imposed. This conclusion is in harmony with SDC 57.1310, now SDCL 10-28-21, which decrees that:

> "All railroad property assessed by the department of revenue shall be taxable upon such assessment at the same rates and for the same purposes as the property of individuals within such counties, cities, incorporated towns, civil townships, and lesser taxing districts."

In Chicago, Milwaukee, St. Paul and Pacific R. R. Co. v. Gillis, 80 S.D. 50, 118 N.W.2d 313, the state was contending that the operating property of the railroad could be valued for taxation higher than other real and personal property. We rejected its view and held that such property was to be taxed at the same rate as the property of other individuals. To hold otherwise would violate the uniformity requirements of Art. XI, § 2 and constitute impermissible discrimination.

In Chicago and North Western Railway Company v. Gillis, 82 S.D. 470, 148 N.W.2d 581, one of the matters urged by the railway was the claim that the taxable value of its operating property had been fixed at 60% of its full and true value while that of other properties was less than 60% of their true values. Its contention was that it was entitled to have the lower figure used in fixing the taxable value of its

property. While we did not reach that issue because of a deficiency in the record we did say:

> "Where the unlawful discrimination results from valuing the property of one taxpayer proportionately higher than that of others, the rate levied against all being the same, the remedy almost universally given to the taxpayer against whom the discrimination exists is to reduce his valuation to the same percentage of true value used in the case of those in whose favor the discrimination was granted and compute his tax accordingly."

This statement is taken from the earlier case of Chicago, R. I. and P. Ry. Co. v. Young, 60 S.D. 291, 244 N.W. 370. See also Baken Park, Inc. v. Pennington County, 79 S.D. 156, 109 N.W.2d 898. In our opinion the trial court acted properly in ordering that the taxable value of the property involved be reduced to the same proportion of full and true value as that applied to other real and personal property in the counties involved.

■ Another issue submitted to the trial court by the state in its proposed conclusions of law concerns the certification procedure adopted in the court's conclusions and prescribed by its judgment. After computing the reductions ordered the department of revenue was required to certify the proper proportion of the taxable values of the property involved pursuant to SDCL 10-28-16 and 10-28-17. These two sections prescribe the annual certification to be made by the department of revenue of railroad operating property to the counties concerning the amount of such property therein, outside of the cities and towns and its assessed valuation, and to the cities and towns giving them similar information as to such properties within their boundaries.

The state suggested that the certification should be pursuant to SDCL 10-38-19. This section has to do with the property of utilities and carriers in general when a tax assessment or tax originally and directly assessed by the department of revenue or the state board of equalization shall have been adjudged illegal or set aside by the court. This

assessment was not void, only excessive. Moreover, it seems to apply only in the situations where the commissioner of revenue is required to reascertain and redetermine the full and true value of all the taxpayers' taxable property. SDCL 10-38-14. That is not this case.

Here the parties have stipulated the full and true value and the ratios to be utilized in equalizing it with other property. The application of these percentages to such values is a mere ministerial act—a reduction of the assessment to the common level. In appeals such as this the action of the court is the final act in the assessment process. Chicago and North Western Railway Company v. Schmidt, 85 S.D. 223, 180 N.W.2d 233. In effect, it sits as another board of equalization. The method of certification it selected is proper. It was used in the two North Western cases cited in the first paragraph of this opinion. The procedure urged by the state is not applicable in this situation. Under it the parties might be back where they started.

Affirmed.

BIEGELMEIER and WOLLMAN, JJ., concur.

HANSON, J., dissents.

WINANS, J., concurs in dissent.

HANSON, Judge (dissenting).

I am unable to agree.

Absolute equality of taxation is not constitutionally required or guaranteed in this state. Article XI, § 2, of our Constitution empowers the legislature to divide all property into classes for purposes of taxation and then commands "Taxes shall be uniform on all property of the same class". This constitutional standard has been fully complied with and the railway company cannot further have its operating property equalized with all other noncomparable classes of property in this state.

The controlling rule is expressed by the United States Supreme Court in early landmark Kentucky Railroad Tax Cases in the following language:

"The whole matter is left to the discretion of the legislative power, and there is nothing to forbid the classification of property for purposes of taxation and the valuation of different classes by different methods. The rule of equality, in respect to the subject, only requires the same means and methods to be applied impartially to all the constituents of each class, so that the law shall operate equally and uniformly upon all persons in similar circumstances. There is no objection, therefore, to the discrimination made as between railroad companies and other corporations in the methods and instrumentalities by which the value of their property is ascertained. The different nature and uses of their property justify the discrimination in this respect which the discretion of the Legislature has seen fit to impose." Cincinnati, N. O. and T. T. R. R. Co. v. Kentucky, 115 U.S. 321, 6 S.Ct. 57, 29 L.Ed. 414.

Again in a later case the court reiterated:

"That the states may classify property for taxation; may set up different modes of assessment, valuation and collection; may tax some kinds of property at higher rates than others; and in making all these differentiations may treat railroads and other utilities with that separateness which their distinctive characteristics and functions in society make appropriate—these are among the commonplaces of taxation and of constitutional law." Nashville, C. & St. L. Ry. v. Browning, 310 U.S. 362, 60 S.Ct. 968, 84 L.Ed. 1254.

Nonoperating railroad property is locally assessed the same as other comparable property. We are therefore concerned only with the assessment and equalization of railroad operating property. In this respect our court has correctly pointed out that railroads are not often bought and sold and have no established market value. Because of its inherently different nature railroad operating property must of necessity be separately classified. This is universally recognized. See 84 C.J.S. Taxation § 37, p. 127, 51 Am. Jur.,

Taxation, § 201, p. 260. An annotation on the subject states "Railroads constitute a natural class", 60 L.R.A., p. 346. In recognition of this fundamental fact our legislature has separately classified railroad operating property for purposes of taxation. An entire chapter of our Code is devoted to the subject of "Taxation of Railroad Operating Property", see SDCL 10-28. Such property is centrally assessed by the State Department of Revenue as a unit according to a complicated formula which takes into consideration the value of stocks, bonds, indebtedness, income, replacement value, depreciation and obsolescence. It is then equalized as a class by the State Board of Equalization. SDCL 10-28-15. There is no other provision in our laws authorizing the State Board of Equalization to compare or equalize railroad operating property with any other class of property. This is beyond its jurisdiction, power and authority.

Our legislature has a broad discretion in classifying subjects of taxation. In doing so it does not have to say "This or that property is hereby separately classified for purposes of taxation" as the majority would seemingly require. As stated in Snyder v. Maxwell, 217 N.C. 617, 9 S.E.2d 19, "The Legislature is not required to preamble or label its classifications or disclose the principles upon which they are made". By providing for a separate method of assessing railroad operating property and for its equalization by the State Board as a distinct class our legislature has separately classified such property for purposes of taxation by implication. This was the conclusion reached in the comparable case of City of Richmond v. Commonwealth, 188 Va. 600, 50 S.E.2d 654.

Our legislature did not put an identifying label on any of the following properties: Airline Flight Property, SDCL 10-29; Private Car-Line Companies, SDCL 10-31; Telephone Operating Property, SDCL 10-33; Telegraph Companies, SDCL 10-34; Operating property of light, power, heating, water, and gas companies, SDCL 10-35; and Pipe Line Companies, SDCL 10-37. Despite the absence of labels it can hardly be questioned that each of the enumerated properties has been separately classified.

It has been stipulated that all railroad operating property in South Dakota has been fairly equalized by the State Board of Equalization among themselves. This judicial admission by defendant, in my opinion, conclusively shows the constitutional requirement of equality and uniformity has been fully complied with. The railroad cannot further constitutionally require its operating property to be equalized with any other class of property in the state. In Tappan v. Merchant's National Bank, 19 Wall. 490, 86 U.S. 490, 22 L.Ed. 189, the taxpayer was similarly complaining about the nonuniform taxation of shares of bank stock. The United States Supreme Court said it was a sufficient answer to say:

> "that all persons owning the same kind of property are taxed as he is taxed. Absolute equality in taxation can never be attained. That system is the best which comes the nearest to it. The same rules cannot be applied to the listing and valuation of all kinds of property. Railroads, banks, partnerships, manufacturing associations, telegraph companies, and each one of the numerous other agencies of business which the inventions of the age are constantly bringing into existence, require different machinery for the purposes of their taxation. The object should be to place the burden so that it will bear as nearly as possible equally upon all. For this purpose different systems, adjusted with reference to the valuation of different kinds of property, are adopted. The courts permit this."

The State Sales Ratio Study is merely an informational study conducted by the Department of Revenue. Its purpose is to show the percentage of assessed valuation of real property to actual sales in each county. The sales ratio for each county therefore must be a composite or average figure. The ratio of 52% in Sanborn County, for example, must of necessity mean some real property in that county is assessed above 52% of its market value. By ordering the railroad property reduced to 52% in Sanborn County all real property in such county assessed over that figure will be discriminated against.

The railroads operating property, in reality, is a vast interstate utility consisting of a complex mixture of real, personal, and intangible property. The South Dakota Sales Ratio Study, on the other hand, is limited to real property valuations and assessments. The two types of property are not comparable. In an attempt to correct this lack of similarity it has been stipulated that all personal property in the state has been assessed at 60% of its true and full value. A weighted real and personal property ratio is then assigned to each county. By reducing the valuation of the railroad property below the 60% factor in each county to correspond with the weighted county ratio, as the majority opinion directs, every personal property taxpayer in the state will be discriminated against.

The wisdom of the legislature in separately classifying railroad operating property is reflected in this case. By refusing to apply and enforce this "common place of taxation" a Pandora's Box has unfortunately been opened.