### In re BERTHOUD.

#### (District Court, S. D. New York.   March 3, 1916.)

1. BANKRUPTCY &⧟14—JURISDICTION OF COURTS OF BANKRUPTCY—ALIENS AS PARTIES.

Bankruptcy Act July 1, 1898, c. 541, 30 Stat. 545, § 2 (Comp. St. 1913, § 9586), provides that courts of bankruptcy shall have jurisdiction to adjudge persons bankrupt who have had their principal place of business, resided, or had their domicile within their respective territorial jurisdictions for six months, or who do not have their principal place of business, reside, or have their domicile within the United States, but have property within their jurisdictions, or who have been adjudged bankrupts without the United States and have property within their jurisdictions. *Held*, that whether an alleged bankrupt or his creditors, or both, are aliens, the United States courts have jurisdiction, provided there is property within their jurisdictions.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 20; Dec. Dig. &⧟14.]

---

2. BANKRUPTCY ☞14—JURISDICTION OF COURTS OF BANKRUPTCY—"PROPERTY" WITHIN THE DISTRICT.

The obligation of a bank within the district to a depositor, whether called a debt or a chose in action, is "property" and its situs is within the district within Bankruptcy Act, § 2, as to the jurisdiction of courts of bankruptcy, as the situs of personal property depends largely upon the question involved in its ownership, and Congress did not intend that there should be any fine distinctions, but intended a bankruptcy proceeding to be a kind of equitable attachment, reaching whatever assets any available judicial process can reach.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 20; Dec. Dig. ☞14.

For other definitions, see Words and Phrases, First and Second Series, Property.]

3. BANKRUPTCY ☞61—"ACT OF BANKRUPTCY"—ADMISSION OF INSOLVENCY.

It is not an act of bankruptcy for an insolvent debtor to sign and publish a statement of his affairs, showing an excess of liabilities over assets.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ☞61.

For other definitions, see Words and Phrases, First and Second Series, Act of Bankruptcy.]

4. BANKRUPTCY ☞60—ACTS OF BANKRUPTCY—ASSIGNMENT FOR BENEFIT OF CREDITORS.

Under Bankruptcy Act, § 3a (Comp. St. 1913, § 9587), specifying as an act of bankruptcy the making of a general assignment for the benefit of creditors, it is immaterial whether such general assignment is made within or without the United States, and whether it is a voluntary assignment or a statutory assignment.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. ☞60.]

5. EVIDENCE ☞37—JUDICIAL NOTICE—MATTERS OF WHICH NOTICE CAN BE TAKEN.

In a bankruptcy proceeding against an alien who had made an assignment for the benefit of creditors in England, where the petition did not show whether the assignment was a voluntary or a statutory assignment, the court could not take judicial notice as to which kind of an assignment it was, though counsel were apparently agreed that it was a statutory assignment.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 52; Dec. Dig. ☞37; Appeal and Error, Cent. Dig. § 2959.]

6. BANKRUPTCY ☞14—JURISDICTION OF COURTS OF BANKRUPTCY—PROPERTY WITHIN DISTRICT.

An alien's bank deposit within a district was property in the district within Bankruptcy Act, § 2, as to the jurisdiction of courts of bankruptcy, though within four months prior to the filing of the petition, the alleged bankrupt had made an assignment for the benefit of creditors, as for the purposes of the statute a general assignment passes only what might be called a "defeasible title," good after four months, but defeated if, within four months, creditors proceed as pointed out by the statute.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 20; Dec. Dig. ☞14.]

7. BANKRUPTCY ☞79—ACTS OF BANKRUPTCY—TIME OF COMMISSION.

That an assignment for the benefit of creditors, asserted as an act of bankruptcy, was made in England, and that under the laws of England acts of bankruptcy must have occurred within three months, did not affect the right of creditors to invoke the jurisdiction of a United States court for the proper district at any time within four months.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ☞79.]

In Bankruptcy. In the matter of Alfred Edward Berthoud, trading and doing business as Coulon, Berthoud & Co., alleged bankrupt. On motion for an order of adjudication. Motion granted.

Carter, Ledyard & Milburn, of New York City (James N. Rosenberg, Edward D. Bechtel, and Samuel Kramer, all of New York City, of counsel), for petitioners.

Geller, Rolston & Horan, of New York City (James F. Horan, George S. Mittendorf, and Edward H. Blanc, all of New York City, of counsel), for Farmers' Loan & Trust Co.

MAYER, District Judge. This is a motion for an order of adjudication on the petition in bankruptcy, the answer of the Farmers' Loan & Trust Company, and the appearance and consent to adjudication by the bankrupt. The Farmers' Loan & Trust Company appears specially and solely for the purpose of challenging the jurisdiction of the court.

The petition was filed May 13, 1914, by James F. Fargo, as treasurer of the American Express Company, an unincorporated association consisting of more than seven members having its principal office and place of business at No. 65 Broadway, in the Borough of Manhattan, city of New York, and by one Jacottet and one Apthorp, both of London, England, and each by his attorney in fact.

On the face of the petition it appears that Berthoud did not have his principal place of business, nor did he reside, nor did he have his domicile, within the United States. Jurisdiction rests upon the assertion that the alleged bankrupt had property within the jurisdiction of the court, namely, an amount on deposit with the National Park Bank of the city of New York in excess of the sum of $30,000. Two acts of bankruptcy are alleged as follows:

"(1) That said Alfred Edward Berthoud, doing business as Coulon, Berthoud & Co., is insolvent, and that within four months next preceding the date of this petition the said Alfred Edward Berthoud, doing business as aforesaid, committed an act of bankruptcy, in that on the 3d day of February, 1914, said Alfred Edward Berthoud, doing business as aforesaid, signed and published a statement of his affairs, showing an excess of his liabilities over his assets in the amount of £31,962. 1s. 6d. (a copy of said statement, certified by a notary public of the city of London is hereto annexed and made part hereof); and (2) in that said Alfred Edward Berthoud, doing business as aforesaid, did thereafter, to wit, on the 9th day of February, 1914, make a general assignment for the benefit of creditors to Arthur Francis Whinney of No. 4 Fredericks Place, Old Jewry, London, E. C., Chartered Accountant."

From the answer it appears that the alleged bankrupt owed the Farmers' Loan & Trust Company $90,000 with interest, and that on February 7, 1914, an attachment was issued by the New York Supreme Court in an action brought by the Farmers' Loan & Trust Company against Berthoud, and that this attachment was duly levied on the deposit in the National Park Bank; that this deposit is $43,441.54, and less than the amount of the trust company's claim. From other allegations in the answer (which need not be repeated), the questions to be determined are: (1) Whether the alleged bankrupt had property within the jurisdiction and with the meaning of the Bankruptcy Law at

the time the petition was filed; and (2) whether, the alleged bankrupt committed an act of bankruptcy.

At the outset it is desirable to dispose of the less important contentions. The petition does not contain any allegation that the petitioners are not entitled to priority of payment within the meaning of section 64b, or that the petitioners have not received a preference within the meaning of section 60ab, and the petition is inaptly drawn in some other formal respects. I think, however, it may fairly be construed that the petitioners were not within the classes of persons entitled to priority. However, I am quite in sympathy with those cases of which Green River Deposit Bank v. Craig (D. C.) 110 Fed. 137, Sabin v. Blake McFall Co., 223 Fed. 501, 139 C. C. A. 49, and In re Crenshaw (D. C.) 156 Fed. 638, are examples. We thus come to the vital questions in the case and the propositions which are urged in the brief and were developed on the argument in support of the attack on jurisdiction. These were: (1) That the act is not to be construed as comprehending aliens in involuntary proceedings; (2) that there was no property within this jurisdiction, because the situs of the property was England, both before and after the general assignment, and, in any event, that the general assignment transferred the title to the assignee (or trustee as he is called); (3) that the acts complained of were not acts of bankruptcy.

Fundamentally the Bankruptcy Law had two purposes: (1) To afford to honest debtors an opportunity of relief, and thereby of beginning their business life anew; and (2) to secure as near as may be an equal distribution to creditors of the bankrupt's property.

[1] The whole structure of the act indicates that under certain circumstances the proceeding was a sort of proceeding in rem. Under section 2 of the act, residence or domicile or the locus of the principal place of business is immaterial if there is property within the United States and the statute confers jurisdiction even in the case of those who have been adjudged bankrupts by courts of competent jurisdiction without the United States, provided that such persons have property within the jurisdictions of the United States.

In many other provisions of the statute the word "property" will be found; and it is apparent that Congress intended that the United States courts should deal with and administer the estates of bankrupts if property existed and was found within our borders. Starting with this premise, it logically follows that Congress did not mean to exclude from the operation of the act those persons who are aliens, whether living here or abroad, who have property within the United States.

While it is true that the beneficent features of the act may thus be availed of by aliens, yet, on the other hand, there is no reason why our own citizens should be discriminated against in the right to have their property laid hold of and administered under the act by reason of the mere fact that the owner of the property is not a citizen or resident of the United States; the word "resident" being used in its comprehensive meaning. This view is fortified by the provision which confers jurisdiction where property is here, even though the owner has been adjudged a bankrupt by foreign courts.

Realizing, of course, that the United States is engaged in a world-wide business, it is fair to assume, as matter of policy and comity, that Congress intended to give all persons, whether citizens, or residents, or neither, equal opportunity to share in the distribution of the property. It seems to me, therefore, that whether the alleged bankrupt is an alien, or his creditors are aliens, or both, the United States courts have jurisdiction, provided there is "property within their jurisdictions."

[2] Whether the obligation of the National Park Bank to pay its depositor, Berthoud, be called a debt or a chose in action, the result is the same. It is clearly property, and has been so considered in many cases involving a wide variety of questions as to the relation between a bank and its depositor; and, by a course of practical construction by courts of bankruptcy, a bank deposit, by whatever name called in law, has been regarded and treated as property.

In dealing with questions of personal property, situs largely depends upon the question involved in its ownership. Courts and Legislatures have placed the situs sometimes at the domicile of its owner, and sometimes at the place where the property is found. In cases where the property is a bank deposit or a chose in action of any kind, the situs may vary, as the case may be, by virtue of tax statutes, inheritance laws, statutes in respect of personal property, or business relations governed by the common law.

I think that Congress in the Bankruptcy Law did not intend that there should be any fine distinctions. The Bankruptcy Law has set up a comprehensive machinery, whereby property throughout the United States with the aid of ancillary jurisdiction may be gathered in by the original court.

I agree that the intent of this statute was to consider "property" as concisely stated by Judge Augustus N. Hand in Re San Antonio Land & Irrigation Co. (D. C.) 228 Fed. 990:

"I will say that I think the meaning of the word 'property' under the Bankruptcy Act should be much the same as that under judicial decisions relating to matters of taxation and attachment. In other words, a bankruptcy proceeding is a kind of equitable attachment, which should be held to reach whatever assets any available judicial process can reach. Consequently the situs of property is not to be determined by general doctrines, such as 'mobilia sequuntur personam,' which may well be applicable in matters like the law of inheritance, but by power of efficient control. Such a view is advantageous, in order to protect creditors and safeguard the taxing power."

We have then a situation where property was in the Southern District on February 7, 1914, the date of the attachment of the trust company.

On February 9, 1914, Berthoud made his general assignment in England, and on May 13, 1914, the involuntary petition was filed. It will be noted that this occurred more than three months after the date of the assignment but within four months thereof.

[3, 4] Before discussing the general assignment, I may state that the allegation of paragraph third of the petition as to the signing and publishing by Berthoud of a statement of his affairs does not constitute an allegation of an act of bankruptcy. Section 3a provides:

"Acts of bankruptcy by a person shall consist of his having * * * (4) made a general assignment for the benefit of his creditors."

Obviously this was made an act of bankruptcy because the alleged bankrupt thereby placed the property for the time being beyond his control. It is therefore immaterial whether such a general assignment is made within or without the United States, and the statute evidently contemplated that wherever a person made such a general assignment, the act was an act of bankruptcy.

[5] From the petition it does not appear whether the assignment in England was a voluntary or a statutory assignment, although counsel on the argument were apparently agreed that it was a statutory assignment. However, this court cannot take judicial notice from the papers under consideration as to which kind of an assignment this was. But while the question might be simplified if it appeared that the assignment was a statutory assignment, the result would be the same whichever kind of an assignment took place.

[6] Counsel for the trust company argue with much ingenuity that title passed at once to the assignee in London, and therefore that there was no property in this jurisdiction when the petition was filed. It seems to me, however, that this is arguing in a circle. For the purposes of our statute a general assignment passes what might be called a "defeasible title," good after the expiration of four months, but defeated if, within four months, creditors proceed as pointed out by the statute. I do not fail to appreciate that the argument is made that the title to the property had already passed, and that the allegation of the act of bankruptcy cannot relate the situation back so as to create property where none existed. But it seems to me that the reasoning is that property was in this jurisdiction, and that the general assignment took it permanently out of this jurisdiction only and if the four months had elapsed without the filing of a petition in involuntary bankruptcy.

[7] While the English statute is not technically before me, yet to save time I may as well pass upon it. Under that statute a creditor is not entitled to present a bankruptcy petition against a debtor unless the act of bankruptcy upon which the petition is granted has occurred within three months before the presentation of the petition. It seems quite clear to me that our jurisdiction cannot be concerned with this provision of the English statute. Congress has given to those who seek our jurisdiction four months within which to act, and nothing that any foreign jurisdiction can do in that regard can affect the rights of those seeking our courts. In addition to the fundamental question involved in this proposition, it is manifest that there would be lack of uniformity if we were to recognize a provision of this character in a foreign statute, for in one country the period might be two months, in another three months, and so on.

In arriving at the conclusions here stated, it must not be understood that the court will necessarily take jurisdiction if the creditors, as well as the alleged bankrupt, are all aliens residing abroad. It may very well be that the court would decline jurisdiction as in Belgenland v. Jensen, 114 U. S. 355, 5 Sup. Ct. 860, 29 L. Ed. 152, and Watts,

Watts & Co. v. Unione Austriaca di Navigazione (D. C.) 224 Fed. 192, recently affirmed.

Whether the American Express Company, herein referred to, is a domestic corporation or a foreign corporation does not appear, and therefore that question is left open until such time as the fact does appear.

The motion for adjudication is granted, with leave, however, to the trust company to answer on the merits.

As some of the questions presented have not been passed on by the courts, so far as I am informed, all proceedings will be stayed pending review, if it is intended to review the order.