BANK OF AMERICA, N.T. & S.A., Appellant,

v.

WORLD OF ENGLISH, N.V., Appellee.

BANK OF AMERICA, N.T. & S.A., Appellant,

v.

COMMUNICATION & STUDIES INTERNATIONAL, LTD., Appellee.

Civ. A. Nos. C82–488A, C82–489A.

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 29, 1982.

David G. Bisbee, Bisbee & Parker, Dale M. Schwartz, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for appellee.

Robert W. Patrick, Jeffrey L. Raney, Karen Wildau, Jesse H. Austin, III, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for appellant.

## ORDER

ORINDA D. EVANS, District Judge.

This action is a bankruptcy appeal, filed February 5, 1982. Bank of America ("BOA"), a secured creditor of World of English, N.V. ("WOE") and Communication & Studies International, Ltd. ("C & S"), appeals from an Order entered by the Bankruptcy Court on January 27, 1982, which denied BOA's Motion to Dismiss.

BOA asserts that the Bankruptcy Court lacks subject matter jurisdiction to hear the bankruptcy proceedings involving WOE and C & S. More specifically, BOA contends that the Bankruptcy Court incorrectly found that WOE and C & S have "property" in the United States within the meaning of 11 U.S.C. § 109. The Bankruptcy Court's jurisdiction is premised upon this finding. Neither WOE nor C & S have alleged that they satisfy the other criteria set out in 11 U.S.C. § 109. That is, there has been no evidence offered by Debtors that they reside, have a domicile or have a place of business in the United States.

### I. Facts

Both WOE, a Netherland Antillian corporation, and C & S, a Bahamian corporation, are subsidiaries of International Horizons, Inc. WOE and C & S, as well as a group of other subsidiaries of International Horizons, Inc., are engaged in the production and sale of English language learning systems in Japan and other foreign countries. Although the facts concerning the relationship between BOA and International Horizons, Inc. and its subsidiaries have already been described in a previous Order of this Court,[1] the relevant facts will be briefly summarized here so that the issue raised in Appellant's Motion can be fully understood.

Pursuant to a loan agreement ("Loan Agreement") dated January 12, 1979, BOA agreed to provide credit to two subsidiaries of International Horizons, Inc.—International Horizons, N.V. and WOE. Three other subsidiaries (the "Collection Agent Affiliates"), one of which was C & S, also signed the Loan Agreement.[2] The Loan Agreement provided that BOA would advance money to International Horizons, N.V. and WOE and that these advances would be secured by promissory notes executed in favor of the Collection Agent Affiliates. The Collection Agent Affiliates agreed to deliver to BOA the proceeds received on the promissory notes on a daily basis and the consumer contracts, consumer promissory notes and related documents on a weekly basis.

In February, 1981, following a change in the Japanese operations of International Horizons and its subsidiaries, the Collection Agent Affiliates stopped forwarding the proceeds of the Japanese consumer contracts to BOA. On March 19, 1981, BOA obtained a temporary restraining order from this Court preventing the diversion or use of these funds. International Horizons, Inc. filed a bankruptcy petition the next day.

In orders entered March 30, 1981, and April 16, 1981, the Bankruptcy Court permitted International Horizons, Inc. to use certain funds which were found to be "cash collateral" within the meaning of 11 U.S.C.

---

1. *Bank of America, N.T. & S.A. v. International Horizons,* No. C81–873A, Sept. 23, 1981.

2. The two other subsidiaries who signed the Loan Agreement are United Resources K.K. and International Comprehension K.K.

§ 363(a).[3] As protection, BOA was allowed to retain 83% of the collections from certain designated accounts and apply this money daily to the balance of the BOA loans. In addition, 80% of any monies collected directly by International Horizons, Inc. or its subsidiaries from other accounts in which BOA had a security interest were to be delivered daily to BOA.

On May 1, 1981, the Bankruptcy Court ordered that the above-mentioned funds be segregated in interest bearing accounts rather than be applied to the balances of the loans outstanding to BOA. Additionally, the Bankruptcy Court found that it was in the "best interests of the parties" to have the funds transferred to the United States for investment because of the higher interest rates available in this country.[4] The money was transferred to a California branch of Bank of America and is being held there in the form of bank accounts and certificates of deposit.

On July 7, 1981, WOE and C & S filed their petitions for bankruptcy under Chapter 11 of the Bankruptcy Act of 1978 (the "Code"), Pub.L. 95–598, 92 Stat. 2549.[5] On August 27, 1981, BOA filed its motion to dismiss the Debtors' reorganization petitions alleging that the requirements of 11 U.S.C. §§ 109 and 1112(b) had not been satisfied. The Bankruptcy Court denied BOA's motion to dismiss in an order entered January 27, 1982,[6] and BOA appeals this decision to this Court.

## II. *Issues on Appeal*

1. Whether or not the Bankruptcy Court's Order of January 27, 1982 denying BOA's motion to dismiss is an appealable order under 28 U.S.C. § 1334(b)?

2. Whether or not Appellees WOE and C & S have "property" within the United States within the meaning of 11 U.S.C. § 109(a)?

### A. Appealability of Bankruptcy Court Order

■ In the 11th Circuit, absent a direct appeal to the Court of Appeals, appeals from an order of the Bankruptcy Court proceed to the district courts pursuant to 28 U.S.C. § 1334, which states in relevant part:

§ 1334 Bankruptcy Appeals

. . . .

(b) The district courts for such districts shall have jurisdiction of appeals from interlocutory orders and decrees of bankruptcy courts, but only by leave of the district court to which the appeal is taken.

Although this statute does not go into effect until April 1, 1984, Congress has made it clear that this section shall apply during the transition period and that the jurisdiction of the district courts shall be the same as the jurisdiction granted to the courts under Amendment 238, which amended 28 U.S.C. § 1334.[7]

In the Northern District of Georgia, the Interim Bankruptcy Rules have been adopted as the Local Bankruptcy Rules. Rule 8004 sets out the procedure to be followed by parties seeking to appeal a bankruptcy court order. It states, in relevant part:

---

**3.** In addition, International Horizons (Curacao), N.V., North American Exports, Inc. and International Horizons, N.V., were permitted to use those funds. The Court affirmed this part of the orders in *Bank of America v. International Horizons, et al.,* No. C81–873A, slip op. (N.D.Ga. Sept. 23, 1981).

**4.** *In re International Horizons, Inc., International Horizons (Curacao), N.V., North American Exports, Inc., International Horizons, N.V.,* Nos. 81–01231A, 81–01232A, 81–01233A, 81–01234A, slip op. at 3 (Bankr.Ct.N.D.Ga. May 1, 1981).

**5.** The Bankruptcy Reform Act of 1978 (the "Code") took effect on October 1, 1979. Cases filed subsequent to October 1, 1979, are governed by the provisions of 11 U.S.C. §§ 1 *et seq.*

**6.** *In re World of English, N.V., Communication, & Studies International, Ltd.,* 16 B.R. 817 (Bankr.D.Ga.1982).

**7.** The 1978 amendments to Title 28 of the U.S.C. are effective during the transition period. Pub.L. 95–598, § 405(c)(2) (92 Stat. 2685).

Leave to Appeal: Interlocutory Orders

. . . .

(d) Appeal Improperly Taken Regarded as an Application for Leave to Appeal. If a timely notice of appeal is filed where the proper mode of proceeding is by an application for leave to appeal under this rule, the notice of appeal shall be deemed a timely and proper application for leave to appeal. The appellate court may enter an order either granting or denying leave to appeal or directing that an application for leave to appeal be filed. Unless the appellate court fixes another time in its order directing that an application for leave to appeal be filed, the application shall be filed within 10 days of entry of the appellate court's order.

Appellees WOE and C & S argue that because an order denying a motion to dismiss is interlocutory, this Court should exercise the discretion granted to it by 28 U.S.C. § 1334(b) and Interim Rule 8004(d) and dismiss the appeal filed by BOA.

Appellant BOA filed its Notice of Appeal to the District Court on February 5, 1982. This appeal was timely,[8] and therefore the District Court has discretion pursuant to Interim Rule 8004(d) to treat the notice of appeal as a timely and proper application of leave to appeal. This Court concludes that the February 5, 1982 Notice of Appeal will be treated as an application for leave to appeal. The question then remains whether the District Court should grant BOA the leave to appeal the Bankruptcy Court Order.

First, this Court finds that the Bankruptcy Court order dismissing BOA's Motion to Dismiss is an interlocutory order. *Viburnum One Associates v. Flavin Enterprises, Inc.*, 446 F.Supp. 652 (W.D.Mo.1978); 1 Col-

lier on Bankruptcy ¶ 3.03[7][d][iii] (15th ed. 1982). However, this determination does not resolve the above question of whether or not the January 27, 1982 Order is appealable under 28 U.S.C. § 1334(b).

On appeals involving an interlocutory order of the bankruptcy court, the District Judge has discretion to review the interlocutory order or to deny the application for leave to appeal. 28 U.S.C. § 1334(b); *Willyerd v. Buildex Co.*, 463 F.2d 996, 1001 (6th Cir.1972); *Sulmeyer v. Pfohlman*, 329 F.2d 915, 917 (9th Cir.1964); *Viburnum One Associates v. Flavin*, 446 F.Supp. at 653.[9] Although the general rule in bankruptcy cases is that "finality is a prerequisite to appealability," 1 Collier on Bankruptcy ¶ 3.03[7][d][ii] (15th ed. 1982), there are certain instances where interlocutory orders have been found to be appealable. In *Viburnum One*, 446 F.Supp. at 652, the District Court was faced with an issue similar to the one before this Court. That is, whether an interlocutory order of the Bankruptcy Court denying a motion to dismiss for lack of jurisdiction was appealable. The Court concluded that the order was appealable, stating:

> [D]espite the common practice of district judges to refuse to review interlocutory orders of the Bankruptcy Courts, it has been argued that "many, if not most, interlocutory orders of the referee should be considered non-trivial, and therefore reviewable. Examples are temporary restraining orders, orders . . . overruling objections to jurisdiction, and many other orders which, though not finally dispositive of all issues between the parties are nevertheless of sufficient impact as to permit, even require, supervisory review by the district judge."

446 F.Supp. at 654, citing 13 Collier on Bankruptcy ¶ 801.06 (14th ed. 1977).

---

**8.** Bankruptcy Rule 802(a), which applies to appeals in District Court pursuant to Local Rule 8004(a), provides for a 10 day appeal period. BOA appealed the January 27, 1982 order within this 10 day period.

**9.** Although these cases are construing § 39(c) of the Bankruptcy Act and not § 1334 of the Bankruptcy Code, they are helpful in determining standards for appealability once an order

has been deemed to be interlocutory. Because the Code does not lay out standards or procedures by which leave is to be granted or denied, *Roslyn Savings Bank v. Vaniman International, Inc.*, 8 B.R. 751 (E.D.N.Y.1981); 1 Collier on Bankruptcy ¶ 3.03[7][d][v] (15th ed. 1982), courts must look to analogous cases in deciding such issues.

In fact, in both cases cited by Appellees for the proposition that an order denying a motion to dismiss is interlocutory, the District Court did review the interlocutory orders of the Bankruptcy Court. In *Sulmeyer v. Pfohlman,* 329 F.2d 915 (9th Cir.1964), the Ninth Circuit stated that review of an interlocutory order by a District Court is "not ground for reversal in this court." 329 F.2d at 917. More significantly, the Sixth Circuit in *Willyerd v. Buildex Co.,* 463 F.2d 996 (6th Cir.1972), in construing § 39(c) of the Bankruptcy Act, stated that "[w]e find no language in the statute . . . limiting the district court's power of review to 'final' orders and we add none here." 463 F.2d at 1001.

This Court concludes that the Bankruptcy Court order denying the motion to dismiss is appealable. Although the purpose behind the "final order" rule is to prevent "piecemeal litigation," 1 Collier on Bankruptcy ¶ 3.03[7][d][ii] (15th ed. 1982), there are instances where judicial economy will best be served by hearing an appeal.

Collier suggests that District Courts, when deciding an interlocutory order question in a bankruptcy appeal, should examine the cases analyzing the jurisdiction granted the courts of appeals to hear interlocutory orders in 28 U.S.C. § 1292(b). The purpose of 28 U.S.C. § 1292(b) is detailed in the Senate Report which is published with that statute.[10]

Significantly, the Senate Report describes a factual situation in which it would be appropriate for the court of appeals to have jurisdiction to hear an interlocutory appeal:

[I]n a recent case a motion to dismiss for want of jurisdiction was filed in the district court early in the proceedings. The district court denied the motion and the matter then proceeded to trial. The disposition of that case took almost 8 months. Upon final order the case was appealed and the court of appeals determined that the district court did not have jurisdiction and entered an order accord-

ingly. Had this legislation [§ 1292(b)] been in effect at that time, the district judge could have stated in writing his opinion that the motion was controlling and the defendant could thereupon have made application to the court of appeals for a review of the order denying the motion. Had the court of appeals entertained such a motion and reached the conclusion that it ultimately did, it would have resulted in a saving of the time of the district court and considerable expense on the part of the litigants.

S.Rep. No. 2434, 85th Cong., 2d Sess. 2–3, *reprinted in* 1958 U.S.Code Cong. & Ad. News 5256. Likewise, if the Court in the instant case refuses to hear Appellant's appeal of the Bankruptcy Court order, needless time will be wasted if it is ultimately determined by the District Court, after a complete Bankruptcy Court proceeding, that the Bankruptcy Court lacked jurisdiction in the first instance. An immediate appeal from the Bankruptcy Court order may substantially advance the termination of the case.

Therefore, this Court holds that it has jurisdiction under 28 U.S.C. § 1334(b) to hear BOA's appeal of the January 27, 1982 Bankruptcy Court Order.

**B. Who Can Become A Debtor: "Property" Requirement of 11 U.S.C. § 109(a)**

■ Section 109(a) of the Bankruptcy Code, 11 U.S.C. § 109, sets out the eligibility requirements to become a debtor under the bankruptcy laws. 2 Collier on Bankruptcy ¶ 109.01[1] (15th ed. 1982); S.Rep. No. 95–989, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5817. This section provides:

(a) Notwithstanding any other provision of this section, only a person that resides in the United States, or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title.

---

**10.** S.Rep. No. 2434, 85th Cong., 2d Sess. 2–3, *reprinted in* 1958 U.S.Code Cong. & Ad.News 5255.

These requirements were also found in § 2(a) of the Bankruptcy Act. H.Rep. No. 95–595, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Ad.News, 5963, 6275. Therefore, cases construing the meaning of the requirements under the Act will be useful in any analysis of 11 U.S.C. § 109.

The Bankruptcy Court, in its January 27, 1982 order, concluded that WOE and C & S could file petitions for bankruptcy pursuant to 11 U.S.C. § 109(a). The court found that WOE and C & S had bank accounts in a California branch of BOA and determined the United States to be the situs of those accounts. *In re World of English, N.V., and Communication & Studies International, Ltd.,* 16 B.R. 817 (Bankr.Ct.N.D.Ga. 1982). The Bankruptcy Court denied BOA's motion to dismiss for lack of jurisdiction and BOA appeals that order.

First, Appellant BOA argues that the Debtors have no property in the United States and that therefore the Bankruptcy Court lacks jurisdiction to hear Debtors' bankruptcy petitions. BOA states that for purposes of 11 U.S.C. § 109 the courts should look to the federal law of taxation and the law of attachment to determine the location of property. BOA claims that these analogous lines of cases hold the situs of personal property to be the domicile of its owner, regardless of where the property is actually located. In the instant case, BOA claims the situs of the bank accounts is Japan, the Netherlands Antilles or the Bahamas. Therefore, BOA contends that WOE and C & S have no property in the United States and that the Bankruptcy Court has no jurisdiction in this case.

Secondly, BOA asserts that even if the bank accounts are found to be located in the United States, the facts of the instant case preclude the Bankruptcy Court from having jurisdiction over these petitions. BOA contends that the Bankruptcy Court created its own jurisdiction when it ordered the trans-

fer of the funds from Japan to the United States in its May 1, 1982 Order.

In contrast, WOE and C & S are claiming an interest in these accounts, and are basing their right to file a bankruptcy petition in the United States on this "property."

Therefore, the issue for this Court to decide is whether WOE and C & S have "property" in the United States within the meaning of 11 U.S.C. § 109(a).

The parties characterize section 109 of the Code differently. Appellants assert that 11 U.S.C. § 109, as a rule of eligibility, is jurisdictional in nature whereas Appellees argue that the section is a venue provision. This difference in characterization is unimportant in deciding the instant appeal. Whether 11 U.S.C. § 109 is a jurisdictional or venue provision, the section clearly sets out eligibility requirements for filing a bankruptcy petition under the Code.[11] Either an individual resides, has a domicile, a place of business or property in the United States or not. If no such condition is met, then the individual cannot file for bankruptcy under the Code. In support of this determination by the Court, Collier states:

> Section 109, like section 2(a)(1) under prior law, is not characterized in terms of either venue or jurisdiction by the statute itself. Section 109(a) is a rule of eligibility only. It means even though the court has jurisdiction over the subject matter by virtue of 28 U.S.C. 1471(a), and over the person by the fact that the case is voluntary . . . , the provisions of the Bankruptcy Code do not apply to that person. Hence, in a case where a person does not reside in the United States, has no domicile, place of business, or property in the United States, a bankruptcy court would simply not be able to entertain the case.

2 Collier on Bankruptcy ¶ 109.01[2] (15th ed. 1982). Because this case does not involve a situation in which a debtor must choose

---

11. The Fifth Circuit, in construing § 2(a)(1) under the Bankruptcy Act, upon which 11 U.S.C. § 109(a) was based, stated that "courts and the applicable authorities have consistently held that § 2(a)(1) of the Bankruptcy Act is a true venue provision and is not jurisdiction confining or defining." *Bass v. Hutchins,* 417 F.2d 692, 694 (5th Cir.1969).

what particular forum to institute a bankruptcy proceeding, but rather whether an individual can institute bankruptcy proceedings in the United States, all that remains for the Court to decide is whether WOE and C & S satisfy the criteria set out in 11 U.S.C. § 109(a).

As stated above, BOA argues that the situs of the bank accounts is not the United States, but rather the domicile of the owners of these bank accounts. In support of this principle, BOA refers the Court to the law of taxation and cites numerous tax law cases. The Court agrees with Appellant that the general rule under federal tax law is that the situs of personal property is the same as the domicile of its owner. *Grand Prairie State Bank v. United States*, 206 F.2d 217 (5th Cir.1953); *United States v. Webster*, 208 F.Supp. 412 (S.D.N.Y.1962). The Court in *Webster* stated that under federal tax law, bank accounts are treated as personal property having its situs at the domicile of the owners. 208 F.Supp. at 415. In addition, the Internal Revenue Code ("IRC") states that, for purposes of determining whether a tax lien is properly filed and therefore valid, the situs of personal property subject to a lien is the residence of the taxpayer at the time the notice of a lien is filed. 26 U.S.C. § 6323(f)(1), (2).

However, this Court finds both that the cases relied upon by Appellant and the tax lien statute itself are distinguishable from the instant case and are not binding upon the Court in deciding the issue of the situs of the bank accounts in this bankruptcy appeal. The purposes of the federal tax law and the law concerning the filing of tax liens are to protect individuals and corporations doing business with a corporation by preventing "secret tax liens from being effective against named classes of claimants

to a delinquent taxpayer's property," *Marteney v. United States*, 245 F.2d 135, 140 (10th Cir.1957), and to set up a system of determining priorities. The IRC provides that the lien notice should be filed at a place which can be easily identified and determined in order that third parties can be informed of the lien. Congress has decided that this location is the domicile of the owners of the personal property. 26 U.S.C. § 6323(f)(1), (2). The Court in *Grand Prairie State Bank v. United States*, 206 F.2d at 217 explained that "[i]t is the transitory nature of personal property which requires the application of this rule." 206 F.2d at 219. An individual or corporation doing business with another should not be expected to keep a daily inventory of the location of all personal property belonging to that other person in order to determine whether or not a tax lien had been filed against that person.

However, Congress realized the differences between most kinds of personal property and securities and created an exception for securities. Even though a notice of a lien has been filed, certain interests in securities are protected. 26 U.S.C. § 6323(b)(1). The term "security" is defined as:

> any bond, debenture, note, or certificate or other evidence of indebtedness, issued by a corporation or a government or political subdivision thereof, ..., or any certificate of interest or participation in, *certificate of deposit* ...; negotiable instrument; or *money*.

26 U.S.C. § 6323(h)(4) (emphasis added). Clearly, Congress has distinguished cases involving certificates of deposit and bank accounts from ordinary cases involving personal property because of the differing nature of the property.[12]

---

**12.** *See also Tappan, Collector v. Merchants' Nat'l Bank,* 86 U.S. (19 Wall.) 490, 22 L.Ed. 189 (1873) which found that the Illinois General Assembly could tax the owners of shares of the capital stock of a national bank at a place where the bank was located, regardless of the owner's residence. The Court reasoned that the object of the legislation was to "secure uniformity of taxation," 86 U.S. (19 Wall.) at 501, and stated that although shares of stock in national banks are personal property, the law can separate them from the "person of their owner for the purposes of taxation, and give them a *situs* of their own." 86 U.S. (19 Wall.) at 500.

In contrast to the tax law, the purpose behind the Bankruptcy Code is to protect the creditors of a Debtor as well as to "make relief [to an individual in debt] widely available." 2 Collier on Bankruptcy ¶ 109.01[1] (15th ed. 1982).

This Court agrees with Appellees WOE and C & S that the reasoning used by the court in *In re Berthoud,* 231 F. 529 (S.D.N.Y.1916) is applicable to the case at bar. In *Berthoud,* the court was faced with the issue of whether the bankruptcy court had jurisdiction in a bankruptcy proceeding where the sole basis for jurisdiction was a bank account of an alien Debtor. The District Court concluded that the bank account, which was located in the United States, satisfied the "property" requirement, and stated:

> Whether the obligation of the National Park Bank to pay its depositor, Berthoud, be called a debt or a chose in action, the result is the same. It is clearly property, and has been so considered in many cases involving a wide variety of questions as to the relation between a bank and its depositor; and, by a course of practical construction by courts of bankruptcy, a bank deposit, by whatever name called in law, has been regarded and treated as property.

> In dealing with questions of personal property, situs largely depends upon the question involved in its ownership. Courts and Legislatures have placed the situs sometimes at the domicile of its owner, and sometimes at the place where the property is found. In cases where the property is a bank deposit or a chose in action of any kind, the situs may vary, as the case may be, by virtue of tax statutes, inheritance laws, statutes in respect of personal property, or business relations governed by the common law.

> I think that Congress in the Bankruptcy Law did not intend that there should be any fine distinctions. The Bankruptcy Law has set up comprehensive machinery, whereby property throughout the United States with the aid of ancillary jurisdiction may be gathered in by the original court.

231 F. at 533. Similarly, the bank accounts located in California are "property" within the meaning of 11 U.S.C. § 109(a).

Other courts have analyzed the "property" requirement differently, focusing on the need to have "efficient control" and to protect creditors. In *In re San Antonio Land & Irrigation Co.,* 228 F. 984 (S.D.N.Y.1916), the court stated that:

> a bankruptcy proceeding is a kind of equitable attachment, which should be held to reach whatever assets any available judicial process *can* reach. Consequently, the situs of property is not to be determined by general doctrines, such as "mobilia sequuntur personam," which may well be applicable in matters like the law of inheritance, but by power of efficient control ... in order to protect creditors and safeguard the taxing power.

228 F. 990. The court then held that the debtor's balance of $8.06 in a New York bank account was "property" in New York within the meaning of the Bankruptcy Act. 228 F. at 990.

The court in *In re Fidelity Assurance Association,* 42 F.Supp. 973 (S.D.W.Va. 1941)[13] rejected the argument that the doctrine of mobilia sequuntur personam was applicable to certain securities in the hands of the State Treasurer and found that the situs of the securities was where they were located. The court reasoned:

> The doctrine of mobilia sequuntur personam is a legal fiction. Like all such fictions, it originated from necessity. Its use is limited to those cases in which it is necessary that the doctrine be invoked in order to accomplish some beneficial result and in which, without means of the doctrine, some proper governmental, legal or equitable principle would fail of applica-

13. *rev'd on other grounds,* 129 F.2d 442 (4th Cir.1942), *aff'd* 318 U.S. 608, 63 S.Ct. 807, 37 L.Ed. 1032 (1942).

tion. In the absence of such necessity the situs depends upon power of control.

42 F.Supp. at 984.[14]

In accordance with the above reasoning, the Court finds that the situs of the bank accounts is the location of the bank accounts themselves. That is, the situs is the United States and not the domiciles of WOE and C & S. There being no evidence that the bank account was transferred from Japan to California merely to create jurisdiction for a future bankruptcy proceeding involving Debtors, and in light of the fact that WOE and C & S claim an interest in such certificates of deposit, the Court concludes that Debtors have satisfied the eligibility requirements of 11 U.S.C. § 109. As indicated in *In re San Antonio & Irrigation Co.,* 228 F. at 984 and *In re Fidelity Assurance Association,* 42 F.Supp. at 973, courts, when determining the situs of personal property, examine who has control over such property. Here, BOA is holding the assets in its own bank in the form of bank accounts and certificates of deposit. They have control over these funds and the Bankruptcy Court has ordered that the assets be maintained in the accounts pending

a determination of the respective interests of Debtors and BOA. Therefore, the doctrine of mobilia sequuntur personam is not applicable in deciding the issue before this Court.

III. *Conclusion*

On the basis of the foregoing analysis, the Court DENIES Debtors' Motion to Dismiss the appeal of BOA and finds that the Bankruptcy Court Order of January 27, 1982 is appealable. The Court DENIES Appellant BOA's appeal as to the existence of "property" in the United States and finds that the Debtors satisfied the eligibility requirements of 11 U.S.C. § 109(a). The Bankruptcy Court's Order of January 27, 1982 is AFFIRMED.

**14.** Both *Israel-British Bank (London) v. FDIC,* 536 F.2d 509 (2d Cir.1976) and *In re W & G Development, A.G.,* 3 B.C.D. 655 (S.D.N.Y. 1977) are not authority for deciding the issue before this Court. In *Israel-British Bank (London),* the Court of Appeals affirmed the Bankruptcy Court's decision that § 4 of the Act was not applicable to foreign banking corporations. Even though both the Bankruptcy Court and the Court of Appeals stated that the Debtor had "property in [the Southern District] in the form of deposits of money held in five bank accounts in New York City," the court did not have to determine the situs of the property. In addition, *In re W & G* is not on point. The issue in that case was the situs of accounts receivable, not personal property, and the situs

of accounts receivable is determined by a different line of cases. Although this Court agrees with the Bankruptcy Court's decision that it has jurisdiction over Debtors' petitions, this Court disagrees with the Bankruptcy Court's basis for finding jurisdiction. The Bankruptcy Court found that the situs of an account receivable is the location of the account debtor and concluded that:

the banks that hold WOE and C & S accounts are account debtors of C & S and WOE, and that therefore the situs of these accounts is in the United States.

*In re World of English, N.V., Communication & Studies International, Ltd.,* 16 B.R. 817 at 819 (Bankr.Ct.N.D.Ga.1982).