**In re Theresa McTAGUE, Debtor.**

**Bankruptcy No. 96–10666 K.**

United States Bankruptcy Court,
W.D. New York.

July 15, 1996.

Christopher Reed, Assistant U.S. Trustee, Buffalo, New York.

John D'Amato, Barry H. Sternberg, Buffalo, New York, for Debtor.

MICHAEL J. KAPLAN, Chief Judge.

It seems that the present issue is a matter of first impression. A United States citizen who has resided in Canada for eleven years has filed a voluntary Chapter 7 petition here in the Western District of New York on the grounds that she had "property" here—to wit, a $194 bank account—on the day she filed her petition. (That balance has since increased and then subsequently been drawn down to zero.) The United States Trustee has moved to dismiss the case on the grounds that such property is too insignificant to form the sole basis upon which to obtain a bankruptcy discharge in the United States.

The Bankruptcy Code states: "Notwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, *or property in the United States,* or a municipality, may be a debtor under this title." 11 U.S.C. § 109(a) (emphasis added). The venue statute states, in pertinent part:

[A] case under title 11 may be commenced in the district court for the district—

(1) in which the ... *principal assets in the United States,* of the person or entity that is the subject of such case have been located for the one hundred eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-eighty-day period than the ... principal assets in the Unit-

ed States, of such person were located in any other district. . . .

28 U.S.C. § 1408 (emphasis added).

On their face, then, the governing statutes seem to permit "property in the United States" to be the sole basis for a bankruptcy case here. The acting United States Trustee does not dispute that. But she asks whether $194 in a bank account rises to the level of "property in the United States." If it does, would $100 be enough? Would $10 be enough? Would $.10 be enough? Would a peppercorn be enough?

The Court today holds that it is without authority to examine the requisite quantity under 11 U.S.C. § 109(a), but that the small quantity relied on by the Debtor here invites further inquiry under other provisions of the Code, such as sections 305 and 707.

## BACKGROUND

It is surprising to the Court that no published case can be found regarding the instant question, and that the question has not previously arisen in this district. The headquarters of the Western District of New York is Buffalo, and the Bankruptcy Court sits in the United States Courthouse. Although the courthouse is only a seven story building, Fort Erie, Ontario, Canada is clearly visible from its upper floors. For 35 miles, the State of New York and the Province of Ontario are separated only by the Niagara River.[1] Along that stretch, which is known regionally as the "Niagara Frontier," there are located many centers of commerce, culture, shopping, recreation, and, of course, tourism (the focus of tourism here being Niagara Falls). Vehicular traffic is carried between the two nations over four bridges within the Niagara Frontier: the Peace Bridge, connecting Buffalo, New York and Fort Erie, Ontario; the Rainbow Bridge and

the Whirlpool Bridge, both connecting Niagara Falls, New York with Niagara Falls, Ontario; and the Lewiston–Queenston Bridge, connecting Lewiston, New York with Queenston, Ontario. A superhighway named the "Queen Elizabeth Way" connects Fort Erie, Ontario with the metropolis of Toronto, little more than an hour's drive away. The industrial corridor along the Queen Elizabeth Way, together with Toronto itself, is generally considered to be the industrial and financial heart of Canada.

Thousands of residents of Western New York and of southern Ontario cross the border each day. Hundreds of thousands more of such residents cross the border regularly, though not daily.

For many residents of the region, a livelihood lies across the border. That was the case of the debtor at bar. Though an American citizen, she apparently is married to a Canadian citizen and permanently resides in Ridgeway, Ontario, Canada, near Fort Erie. From 1983 until just before the filing of this petition in February of 1996, she was employed on a daily basis in Buffalo, New York, first at Key Corp. Mortgage, Inc. and then at Manufacturers and Traders Trust Company, which is headquartered in Buffalo. As of the time of the filing of the petition, she owed approximately $17,000 in unsecured debt to several credit card lenders, all American. She also had three secured creditors, all Canadian: a mortgage lender, a home equity lender, and an automobile lender.

For reasons not known to the Court, her employment in the United States ceased a few days before the filing of the Chapter 7 petition. She had accumulated more than $6,000 in a 401(k) plan located in the United States, but she liquidated that account and was in the process of moving it to Canada when she filed her petition.[2] While em-

---

1. To the southwest of the Niagara River, the two are separated by Lake Erie, and to the northeast of the Niagara River the two are separated by Lake Ontario.

2. Her attorney alleges that she did not receive the check constituting the proceeds of the retirement account until after the petition was filed. He suggests that these funds too should be viewed as having been "property in the United States." It is unclear how the check was trans-

mitted. But would counsel also suggest that one contemplating an American bankruptcy could place all of her American property in an envelope addressed to herself at a Canadian address, drop it in the mailbox outside the U.S. Courthouse on her way in to file her petition, then receive her assets in Canada the next day, and be entitled to the benefits of a holding that her assets were "in" the United States at the time of filing for 11 U.S.C. § 109(a) purposes? The

ployed at Manufacturers and Traders Trust Co. ("M & T Bank") she maintained a checking account there so that her pay could be deposited to that account directly.

When asked what it is that the Debtor hopes to accomplish by proceeding with this Chapter 7 case, her attorney responded that she desires to end harassing phone calls and mail from her unsecured creditors, and she wants to be able to visit the United States in the future without fear of seizure of her automobile by creditors (admittedly an unlikely occurrence).

It appears that neither she nor her non-debtor husband would be in need of any form of debtor relief in Canada if she is permitted to discharge her unsecured debts in this Court. This Court has not been advised as to whether she could obtain from a Canadian proceeding what she seeks here.

## DISCUSSION

### THE INTERNATIONAL EFFECT OF THIS COURT'S ORDERS

■ Although it may be true that orders of this Court have "extraterritorial effect,"[3]

it is fundamental that those orders can be enforced in a foreign nation only to the extent that the foreign nation grants those orders "full faith and credit" as a matter of comity, treaty or convention.[4] Similarly, although it is true that the federal courts have "exclusive jurisdiction of all of the property, wherever located, of the debtor," 28 U.S.C. § 1334(e), this Court would need the aid of a foreign court to the extent that an exercise of that jurisdiction would require, for example, a recordable court order to clear title to real property located in a foreign country or to enjoin persons located in a foreign country from taking certain actions there.[5]

Totally apart, then, from the question of how the Chapter 7 Trustee would administer any asset in this case other than the $194,[6] any order of discharge that this Court might eventually grant this Debtor would not be enforceable in Canada except to the extent that Canadian courts are moved by comity to grant it "full faith and credit." However, presuming that she is able to return here to seek further relief, the Debtor could seek to punish American creditors in this Court for

Court has its doubts, but need not reach the question.

3. To that effect, see Bankruptcy Judge Burton Lifland's decision in the case of *In re Nakash*, 190 B.R. 763 (Bankr.S.D.N.Y.1996) (finding the receiver of an Israeli court to have violated the automatic stay by filing an involuntary bankruptcy petition against the debtor in an Israeli court while the U.S. bankruptcy case was pending).

4. Ivan F. Ivankovich, *Enforcing U.S. Judgments in Canada: "Things are Looking Up!"*, 15 Nw. J.Int'l L. & Bus. 491 (1995).

United States courts, of course, usually address this axiom in the converse context—recognition of foreign judgments here. *See e.g.*, *Victrix S.S. Co. v. Salen Dry Cargo*, 825 F.2d 709 (2d Cir.1987).

5. Section 304 of the Bankruptcy Code governing ancillary proceedings constitutes the reciprocal remedy; it provides for this Court's aid to a foreign bankruptcy proceeding. The existence of such a provision, however, does not prevent conflicts among bankruptcy proceedings going on in two or more nations. *See, e.g.*, *In re Nakash*, 190 B.R. 763 (Bankr.S.D.N.Y.1996); *Maxwell Communication Corp. v. Barclays Bank (In re Maxwell Communication Corp.)*, 170 B.R. 800 (Bankr. S.D.N.Y.1994) (in which voluntary plenary bankruptcy proceedings were commenced in both

Great Britain and the United States). Such conflicts are not new to this era of "multinational corporations." For example, comity as between a Swedish liquidation and an American bankruptcy was at issue in *In re Aktiebolaget Kreuger & Toll*, 20 F.Supp. 964 (S.D.N.Y.1937), *aff'd.* 96 F.2d 768 (2d Cir.1938). Indeed, up until a 1962 amendment to the 1898 Bankruptcy Act, the mere existence of a foreign bankruptcy provided a basis for adjudication of bankruptcy here if there was property here, virtually assuring a potential conflict. In fact, that provision was viewed as surplusage because, "A person adjudged bankrupt outside the United States and who has no principal place of business, residence or domicile within the United States falls within the second clause of § 2(a)(1) [of the 1898 Act] and venue would be proper in any district in which he has property." 1 James M. Henderson, Remington on Bankruptcy § 50 (5th ed. Supp. 1977) (citing S.Rep. No. 1954, 87th Cong., 2nd Sess. 1 (1962), *reprinted in* 1962 U.S.C.C.A.N. 2603, 2604 (which accompanies the 1962 amendment to § 2(a)(1) of that Act)).

There is vibrant interest in the development of protocols for cooperation in multinational insolvencies, and there is much literature and many organizations addressing the issue.

6. The intriguing question of what exemption laws apply in this case is yet to be addressed.

any "extraterritorial" violation of the discharge order. In other words, to say that the discharge order has "extraterritorial effect," as was held in *In re Nakash*, is merely to say that extraterritorial violations of the order may be punished in the United States if the violating party is otherwise subject to this Court's jurisdiction. Beyond that, the "extraterritorial effect" of the discharge order is a matter for consideration by the foreign court.

## "PROPERTY IN THE UNITED STATES" AS THE SOLE BASIS FOR AN AMERICAN BANKRUPTCY

Permitting an American bankruptcy solely on the basis of "property in the United States" was not an innovation of the 1978 Reform Act. Rather, it existed under prior bankruptcy law[7] and possibly had its origins in times when bankruptcies were an involuntary remedy only. It is obvious why creditors might wish to seize American property of a foreign debtor, to obtain some satisfaction on what they are owed. What little case law there is on the subject at bar arises almost exclusively with regard to involuntary bankruptcies in which American creditors are fearful that assets in the United States will either be removed therefrom or will end up being administered in accordance with a foreign bankruptcy law or foreign insolvency law that might treat those creditors less favorably than American bankruptcy law.[8] In any such case, of course, we would be speaking of property that one or more creditors have already determined to be of significant value and so, consequently, such cases do not assist in addressing the arguments made

here by the United States Trustee regarding a meager $194. That amount is so insignificant in contrast to $17,000 in unsecured debt that the Chapter 7 Trustee would be well justified in abandoning it to the Debtor under 11 U.S.C. § 554 as being of "inconsequential value" to the estate.

The United States Trustee's argument presumes it to be proper for the Court to inquire into the quantity of "property in the United States" for purposes of determining eligibility to be a debtor under 11 U.S.C. § 109(a). But even though Congress has demonstrated in provisions such as § 554 its ability to specifically address property that is of "inconsequential value" in the Bankruptcy Code, Congress has elected in § 109(a) not to use a phrase like "property that is of consequential value."

On the other hand, the word "property" is inherently vague in a number of contexts. For example, if the only "property" that a debtor claims to have in the United States is an American telephone number or post office box, would that qualify as "property in the United States?" Where "is" a phone number? The same question perhaps may be asked when the "property" consists solely of a cause of action against, for example, a multinational corporation suable in many countries including the United States.[9]

Nonetheless, $194 in a bank account is clearly "property," and at least two courts have held that such an account is property "in" the district in which the deposit account is located, even though bank deposits may be

7. Section 2(a)(1) of the 1898 Act invested the courts of bankruptcy with authority to adjudge persons bankrupt who "do not have their principal place of business, reside, or have their domicile within the United States, but have property within [the courts'] jurisdiction...." The district court in *In re Berthoud*, 231 F. 529, 532 (S.D.N.Y.1918), noted that, "residence or domicile or the locus of the principal place of business is immaterial if there is property within the United States...."

8. Consider, for example, *In re Neidecker*, 82 F.2d 263 (2d Cir.1936), in which a French judgment somewhat akin to an involuntary bankruptcy was viewed to be a sufficient basis upon which to

grant involuntary bankruptcy here, as to property here. *See also In re Berthoud; In re Aktiebolaget Kreuger & Toll.*

9. Similar questions were addressed in *In re San Antonio Land & Irrigation Co.*, 228 F. 984 (S.D.N.Y.1916), wherein a Canadian company was found to have had its principal place of business in Texas, where an involuntary petition had been filed, rather than in New York, where it had subsequently filed a voluntary petition. The Court addressed in dictum the true situs of such property as pledged shares of stock, pledged bond certificates, and a deposit (of unspecified amount and location) "to meet unpaid coupons," as well as an $8.06 bank account.

viewed as being "in" the place of residence of the depositor for certain other purposes.[10]

■ Consequently, as applied to the case at bar, the statute does not appear to be vague or ambiguous, and it seems to have such a plain meaning as to leave the Court no discretion to consider whether it was the intent of Congress to permit someone to obtain a bankruptcy discharge solely on the basis of having a dollar, a dime or a peppercorn located in the United States. The Court will so rule.

Therefore, the Court concludes that in light of Congress's use of the phrase "property ... that is of inconsequential value" in 11 U.S.C. § 554(b), the language of § 109(a) is clear, and the Court does not have discretion to look behind the language and declare that the quantity of property in the United States will be decisive of eligibility to be a debtor under the Code. *Garcia v. U.S.,* 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984) ("When we find the terms of a statute unambiguous, judicial inquiry is complete, except 'in rare and exceptional circumstances.' " (citations omitted)).

## OTHER GROUNDS FOR DISMISSAL

■ But that conclusion does not end the inquiry. If property has been specifically placed or left in the United States for the sole purpose of creating eligibility that would not otherwise exist, then dismissal might be appropriate on other grounds, such as a bad faith filing, 11 U.S.C. § 707(a); "substantial abuse" of the provisions of Chapter 7, 11 U.S.C. § 707(b); or under principles of abstention, 11 U.S.C. § 305.

In the latter regard, the Court notes that unlike the facts before the Court in the case of *In re Spanish Cay Co.,* 161 B.R. 715 (Bankr.S.D.Fla.1993), there is no creditor here seeking to institute bankruptcy proceedings in a foreign forum, nor is there any reason to believe that the creditors whose debts are sought to be discharged here thought that their rights would be governed by the law of any forum other than that of

the United States. For those reasons and others, abstention is not in order.

But a more substantial question is posed in considering whether the case should be dismissed under 11 U.S.C. § 707(a) "for cause," in light of the strong inference—indeed (in light of the Debtor's spiriting of more than $6,000 out of the country while her bankruptcy petition was being filed) an almost inescapable conclusion—that the $194 was left in the United States for the very purpose of creating jurisdiction here and eligibility to be a debtor here. Such conduct could contribute to "bad faith" in the filing, as discussed later. What little guidance might be found in that regard is found in *World of English.* There, the court was asked to determine whether subject matter jurisdiction existed under 11 U.S.C. § 109 in light of the fact that the bank accounts which constituted the "property in the United States" should be treated as having a situs in the domicile of the owners of the bank accounts. The Court rejected the argument, finding that,

> the situs of the bank accounts is the location of the bank accounts themselves.... *There being no evidence that the bank account was transferred from Japan to California merely to create jurisdiction for a future bankruptcy proceeding involving Debtors, ... the Court concludes that Debtors have satisfied the eligibility requirements of 11 U.S.C. § 109.*

*World of English,* 23 B.R. at 1023 (emphasis added). It is hard for the present Court to see how the placing of property in the United States for the purpose of creating eligibility is, itself, an "eligibility issue" under § 109, as opposed to a "bad faith filing issue," but the present Court agrees with the earlier court that attention must be paid to the circumstances under which the property has arrived here or left here. The present Court views that as an 11 U.S.C. § 305 issue or § 707 issue (in a Chapter 7 case) rather than as a § 109(a) issue.

Under those provisions, scores of cases teach that the Court must examine the "totality of circumstances" in determining

---

**10.** *In re Berthoud,* 231 F. 529, 533; *Bank of America v. World of English,* 23 B.R. 1015, 1021 (N.D.Ga.1982); *see also* the dictum regarding an

$8.06 bank account in *In re San Antonio Land & Irrigation Co.,* 228 F. at 990.

whether the case should be dismissed as a "bad faith filing" (§ 707(a)), a "substantial abuse" of Chapter 7 (§ 707(b)), or in the interest of comity (§ 305(a)(2)), or in the best interest of the debtor and creditors (§ 305(a)(1)).

In the case at bar, it has been specifically agreed that only the § 109(a) issue was presented by the U.S. Trustee's Motion to Dismiss. This Court now denies that motion, holding that the Court is without discretion to weigh the quantity of property that is clearly "property" (as compared, perhaps, to a telephone number or a post office box), and is clearly "in the United States."

But the Court hastens to add that this ruling invites further inquiry under other provisions of the Code here where the small amount of property is but one of a number of provocative circumstances. From the record in the case it is clear that in May of 1995, the Debtor received nearly half of a year's pay as separation pay from Key Mortgage, yet her schedules disclose that all of her credit card debts were incurred in 1995. Indeed, a proof of claim filed by Bank One states that the account was opened on December 4, 1995, and was run up to $3545.45 between then and the February 21, 1996 filing date, despite the Debtor's having called counsel for an appointment regarding bankruptcy on December 8, 1995. At the time her petition was filed, she was in the process of converting a § 401(k) plan to more than $6,000 in cash, and rather than holding it intact pending any objections to her claim of exemptions, she used it to pay down a secured claim in Canada. After the filing date, one more $337.04 payroll deposit was made to her American account, but she closed out the account on March 8, 1996, again (it seems) without concurrence of the Chapter 7 Trustee. The Court does not know how or why the credit card debt incurred in 1995 was incurred, nor what caused the Debtor's cessation of employment here, or liquidating of her retirement account.

The U.S. Trustee's Motion to Dismiss under 11 U.S.C. § 109(a) is denied without prejudice to her amending it to seek dismiss-

al under another provision of the Code, if she thinks it appropriate.

SO ORDERED.