**In re Joseph NAKASH, Debtor.**

**Joseph NAKASH, Debtor–Plaintiff,**

**v.**

**Schmuel ZUR, The Official Receiver of the State of Israel in His Capacity as Such and in His Capacity as Liquidator of the North American Bank, Ltd. (in Liquidation), Yori Nehushtan, and John Does 1–50, Defendants.**

**Bankruptcy No. 94 B 44840.**
**Adv. No. 95/8101A.**

United States Bankruptcy Court,
S.D. New York.

Jan. 12, 1996.

Arthur Steinberg, Kaye, Scholer, Fierman, Hays & Handler, New York City, for debtor.

Evan D. Flaschen, Hebb & Gitlin, P.C., Hartford, CT, for the Examiner.

Jonathan J. Lerner, Sally M. Henry, Skadden, Arps, Slate, Meagher & Flom, New York City, for the Official Receiver.

## *MEMORANDUM ENDORSEMENT OF DEBTOR'S MOTION FOR, INTER ALIA, STAYING THE RECEIVER FROM VIOLATING THE AUTOMATIC STAY*

BURTON R. LIFLAND, Chief Judge.

The following constitutes this court's amplification of the bench ruling rendered at the hearing held January 11, 1996:

The instant motion (the "Motion") and related adversary proceeding, filed by the Debtor on February 1, 1995, requests this court to find the Official Receiver of the State of Israel (the "Receiver"), and others, in violation of the automatic stay (the "Stay") primarily for the act of having filed a second involuntary bankruptcy petition (the "Second Involuntary" or the "Petition") against the Debtor in Israel. The Motion sought civil contempt sanctions and actual and punitive damages. Since the filing of the Motion, it is undisputed that the Receiver took additional *ex parte* acts (the "Subsequent Acts") against the Debtor and related entities. These Subsequent Acts have only lately come to the attention of this court and all parties in interest.[1] They have been the subject of numerous additional filings with the court, some made as late as the actual commencement of the hearing on the original Motion.

At the hearing held on January 11, 1996, I limited the parties' arguments to the single,

---

1. *See* "Statement of the Official Receiver of the State of Israel Concerning The Court's Order Dated December 29, 1995. And The Information Provided Herewith" at 2–5.

narrow issue (already joined) of whether the Receiver's filing of the January 11, 1995 Instruction Motion and the Second Involuntary petition violated the automatic stay. The issue of contempt damages for such acts, as well as the Debtor's other requested relief will be left for future determination. Following argument on the Motion, as limited above, and pursuant to this court's order of December 29, 1995, a status conference to consider all issues among the parties was held. The parties unanimously agreed to be guided by three principle goals going forward, namely 1) to preserve assets of the Debtor; 2) honor the integrity of the courts of both countries and 3) reduce costs. It was determined that given the Receiver's and the Examiner's[2] willingness to immediately consider the construct of a protocol to harmonize and coordinate the proceedings here and in Israel, that all matters not involved in this limited ruling would be subject to further scheduling in accordance with the needs of the case and proceedings.

## FACTS:

The facts of this case have been sufficiently set forth in the various pleadings before this court. I need only repeat those facts which are relevant to the instant ruling.

### The Debtor

The Debtor has diversified business interests throughout the world including, *inter alia*, fashion apparel, trans-oceanic shipping and real estate businesses. Nakash conducts his business interests through corporations and/or partnerships or other ventures and enterprises in which the Debtor holds an equity or investment-position interest. From March 1983 through August 1985, Nakash was a member of the board of directors of The North American Bank, Ltd. ("NAB"), an Israeli banking institution which was declared insolvent. On October 14, 1994 (the "Petition Date"), Nakash filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code (the

"Code") and is currently managing his affairs as debtor and debtor-in-possession. Pursuant to the Debtor's Rule 52 Affidavit and as set forth in further detail below, Nakash filed the Petition in response to a $160 million judgment entered in Israel on December 27, 1993 against Nakash and others in favor of the Receiver related to the failure of NAB (the "Judgment"). To secure the Judgment, the Receiver, on October 12, 1994, obtained an attachment order in the U.S. District Court for the Eastern District of New York.

### Pre–Petition Activities:

#### The Judgment

The Judgment mentioned above was entered in favor of the Receiver against Nakash on December 27, 1993 by the Jerusalem District Court (the "Jerusalem Court"). The Judgment was the result of an action which the Receiver initiated against Nakash and other managers of NAB, a failed Israeli bank which the Receiver was appointed to liquidate. The action alleged, *inter alia,* that Nakash and other directors of NAB (the "defendants") failed to properly monitor NAB's affairs, detect criminal activity of its' managers and, through acts of financial self-dealing, breached fiduciary duties owed to the bank and its shareholders. The defendants were found liable for negligence, breach of fiduciary duty and fraud and the Judgment was imposed against them jointly and severally. Nakash appealed the Judgment in April 1994. Initially, the appeal was scheduled to be heard in December 1995 (the "Judgement Appeal") however such date has been adjourned allegedly to April 25, 1996.

#### The First Involuntary in Israel

On January 30, 1994, the Receiver filed an involuntary bankruptcy proceeding against the Debtor in Israel (the "First Involuntary") which the Israeli court dismissed. The Receiver appealed the dismissal. On September 18, 1995 the Supreme Court of Israel

**2.** Upon being apprised of the facts and circumstances of the Debtor's cross-border situation, this Court concluded that it would be in the best interests of the Debtor and his creditors wherever situated to seek avenues for the promotion of international cooperation and coordination with respect to the various judicial actions in the United States and Israel involving the Debtor

and his assets. In furtherance of these objectives, on February 7, 1995, this Court entered its Order Appointing Examiner (the "Examiner Order") directing the appointment of an examiner. In accordance with the Examiner Order, this Court approved the United States Trustee's selection of Richard A. Gitlin as the Examiner.

reversed the dismissal of the First Involuntary and remanded it to the Jerusalem District Court. No hearing date has been set.

### The U.S. Attachment

In order to enforce the Judgment, the Receiver, on July 19, 1994, commenced an action against the Debtor in the Eastern District of New York (the "District Court"). The District Court granted the Receiver an order of attachment. On October 12, 1994, the District Court confirmed the attachment order but stayed enforcement proceedings pending final adjudication of the Judgment Appeal in Israel. Two days later Nakash filed for Chapter 11 in this court.

### The U.S. Chapter 11

In connection with the filing of Chapter 11, this court, on October 17, 1994, granted an automatic stay order (the "Automatic Stay Order") which was filed by the Debtor "as a prophylactic measure to apprise third parties of the existence and effect of sections 362 and/or 525 of the Code ...". The Receiver, calling to the attention of this court that the "pro forma" order was stylized to target the Receiver alone, moved to vacate that part of the Automatic Stay Order which specifically referred to application of the stay to it. This court granted the vacatur based on the fact that no such order was necessary to apprise the Receiver of the existence of U.S. bankruptcy law and therefore the applicability of the automatic stay.

### Post–Petition Activities:

#### The Second Involuntary

On January 16, 1995, the Receiver, without prior notice to this court or the Debtor, filed a second involuntary petition against the Debtor in Israel (the "Second Involuntary" or the "Petition"). The hearing on this is allegedly scheduled for February 11, 1996.

#### The Instant Motion

The Debtor, in response, commenced the instant Motion and adversary proceeding on February 1, 1995 alleging that the Receiver violated the automatic stay by filing the Second Involuntary.

#### The Instruction Motion

On October 11, 1995, the Receiver, in his objection to the instant Motion, revealed, for the first time that he had, prior to filing the Second Involuntary, filed an ex parte "Urgent Motion to Give Instruction" (the "Instruction Motion") with the Jerusalem Court. Specifically, the Instruction Motion requested the Jerusalem Court to instruct the Receiver to file the Second Involuntary against the Debtor. The Jerusalem Court endorsed the Instruction Motion with the statement "the filing of the motion for involuntary bankruptcy is approved".

### DISCUSSION:

The court, having made an independent inquiry into the law of this circuit as applied to the instant facts, finds merit and concurs in the position expressed by the Examiner in his Statement dated December 27, 1995 (the "Statement of Examiner"). For the following reasons, the court finds the Receiver in violation of the stay, albeit such violation may, under the specific circumstances presented, be of such consequence that consideration of sanctions of a somewhat limited nature as recommended by the Examiner be considered. *See* Statement of Examiner at 16–19.

In finding that the Receiver has violated the automatic stay I reject the Receiver's arguments in opposition, which include that: 1) the automatic stay does not apply extra-territorially, 2) the filing of the Second Involuntary was an Act of State immune from this court's examination, 3) comity requires that this court respect the Receiver's act because such act was mandated pursuant to Israeli law and Israeli court order; and 4) that the Second Involuntary was filed to aid this court.

### Jurisdiction

First, this court has personal jurisdiction over the Receiver and his actions are subject to this court's examination. The Receiver has submitted himself to the courts of the United States, including this court, by, *inter alia,* seeking attachment in the Eastern District of New York, appearing through New York counsel as a party in interest before this court, filing pleadings including an order to show cause seeking to vacate the Debtor's Automatic Stay Order and plead-

ings objecting to the Debtor's discharge and claimed exemptions, filing a proof of claim, participating in a discovery exchange program, among many other acts. *See Fotochrome, Inc. v. Copal Co., Ltd.,* 517 F.2d 512 (2d Cir.1975); *In re Deak & Co., Inc.,* 63 B.R. 422, 433 (Bankr.S.D.N.Y.1986).

### Extraterritorial Application of the Stay

■ The Receiver asserts that unless Congress has expressed an affirmative intention otherwise, there is a presumption against extraterritoriality. *See EEOC v. Arabian American Oil Co.,* 499 U.S. 244, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) (absent demonstrable intent in the statute itself that the statute apply extraterritorially, a court must presume that it was intended to address only domestic conditions). According to the Receiver, sections 541 and 362 of the Code contain boilerplate and vague language which provide an insufficient basis upon which to infer extraterritorial application of the automatic stay. The Court finds, however, that based upon the applicable Code sections, other indicia of congressional intent and case law in this district, the automatic stay applies extraterritorially.

The filing of a voluntary petition "creates an estate comprised of all of the debtor's property, wherever located and by whomever held". 11 U.S.C. § 541(a). Additionally, the filing of a petition automatically operates as a stay applicable to all entities, of, *inter alia,* the

> "commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case ..." 11 U.S.C. § 362(a)(1).

Moreover, 28 U.S.C. § 1334(d) gives the relevant district court, and, by jurisdictional grant pursuant to 28 U.S.C. § 157(a), this court, exclusive jurisdiction of all property of the debtor and its estate "wherever located".

■ In addition to the language of the above statutes, legislative history makes clear Congress' intent that "wherever located" language be broadly construed to include property located in and outside of the U.S. *In re Deak & Co., Inc.,* 63 B.R. at 427; *In re Filipek,* 35 B.R. 339, 341 (Bankr.D.Haw.1983) (nondisclosure of foreign assets constitutes a failure to comply with the terms of 541(a)). Consequently, despite the presumption against extraterritoriality, I find that the stay applies to actions against the debtor and his property outside the U.S.. *See In re McLean Indus.,* 68 B.R. 690, 694 (Bankr. S.D.N.Y.1986) (foreign creditor, whom the bankruptcy court had personal jurisdiction over, violated the automatic stay by arresting the debtor's vessels in Hong Kong); *In re Commodore International,* Findings of Fact and Conclusions of Law, Order September 21, 1995, Ch. 11, No. 94–B–42185 and 94–B–42187 (JLG) (Bahamian Government Liquidators violated the stay by filing *ex parte* pleadings in the Bahamian court without prior permission of the U.S. Bankruptcy Court; "The stay applies to the property of the estate wherever located and by whomever held"); *In re Deak & Co., Inc.,* 63 B.R. at 427 (debtor's estate includes property which has not entered into the "stream of commerce" and technically is not in the U.S.).

The purposes for the stay are furthered by this court's determination. The stay exists to protect the estate from "a chaotic and uncontrolled scramble for the Debtor's assets in a variety of uncoordinated proceedings in different courts". *In re Frigitemp Corp.,* 8 B.R. 284, 289 (S.D.N.Y.1981) (*citing Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 55 (2d Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 and *reh'g denied,* 430 U.S. 976, 97 S.Ct. 1670, 52 L.Ed.2d 372 (1977)). This serves to protect and preserve the estate for the benefit of all creditors. The stay also serves to protect and preserve the jurisdiction of the bankruptcy court so that the court can administer the debtor's estate in an orderly fashion.

■ Here, the Receiver filed the Instruction Motion and the Second Involuntary against the Debtor in Israel approximately three months into the instant Chapter 11 case. This court was not made aware of these actions at the time they were taken. Only upon the Debtor's filing of the instant

Motion was the court apprised of the Second Involuntary and no party was aware of the Instruction Motion until nine months after it was filed. These were clearly acts against the Debtor, affecting property of the estate which served to impugn this court's jurisdiction over and administration of the estate. As such they are *prima facie* violations of the stay.

■ The Receiver seeks to justify his acts by the assertions that: 1) it did not believe the stay automatically applied to proceedings in Israel, 2) the filing would "ensure a stay of proceedings in Israel and the marshalling and orderly distribution of the debtor's assets in Israel" and 3) the filing "supports the U.S. Bankruptcy Court and will be for the benefit of all creditors". *See* Instruction Motion, 1.9, 4. These justifications do not rectify the *prima facie* violation. If the Receiver had doubts about the applicability of the stay he should have sought this court's opinion prior to taking unilateral action. *See In re Crysen/Montenay Energy Co.,* 902 F.2d 1098, 1104 (2d Cir.1990) (creditor with a good faith belief that the automatic stay did not apply still "should have sought the advice of the bankruptcy court as to the applicability of the automatic stay."). In light of the *prima facie* violation of the stay and despite the Receiver's stated intentions, his acts were misguided activities which this court cannot countenance. Moreover, having filed a motion to vacate the Debtor's Automatic Stay Order entered by this court not more than a few days into this case, the Receiver was certainly aware of the implications and nuances of the stay.

## Act of State Doctrine

■ The Receiver alternatively argues that his acts were official, taken on behalf of the State of Israel and as such cannot be reviewed by this Court pursuant to the Act of State Doctrine. This Doctrine, in order to maintain international respect for sovereignty, "prohibits the examination of acts of an independent government by the courts of another sovereign nation". *See Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 417–18, 84 S.Ct. 923, 934–35, 11 L.Ed.2d 804 (1964). The prohibition exists because examination or condemnation of one government's acts by another could "imperil the amicable relations between governments and vex the peace of nations". *Oetjen v. Central Leather Co.,* 246 U.S. 297, 304, 38 S.Ct. 309, 311, 62 L.Ed. 726 (1918).

I find that, in the instant case, the Act of State Doctrine is inapplicable. First, the Receiver was acting as a judgment creditor and not in a sovereign capacity when he filed the Instruction Motion and Second Involuntary. Additionally, finding that the Receiver violated the stay would in no way "imperil the amicable relations" between the U.S. and Israeli governments.

■ The Receiver, Schmuel Zur, is a representative of the Israeli Ministry of Justice, an agency of the State of Israel. His official duties include supervising bankruptcies and liquidations in Israel. Additionally, the Receiver serves as liquidator of companies in liquidation. Here, the Receiver was appointed as the liquidator of NAB. In the role of liquidator, the Receiver has sought to enforce the Judgment he obtained against the Debtor. Among other things, he sought an attachment order in the Eastern District of New York in order to secure the Judgment. The filing of the Instruction Motion and Second Involuntary were further mechanisms by which he attempted to achieve that goal. I do not find such acts to be those which a sovereign would undertake in fulfilling its' duty to supervise bankruptcies. Rather, they are acts similar to those private creditors would undertake in a commercial role. Because the Receiver, in filing the Instruction Motion and Second Involuntary, acted in a commercial capacity, as he did on other occasions in relation to this Debtor, he should not be afforded the blind eye which the Act of State Doctrine affords. *See Alfred Dunhill of London v. Republic of Cuba,* 425 U.S. 682, 706, 96 S.Ct. 1854, 1867, 48 L.Ed.2d 301 (1976). Moreover, applicable Israeli law distinguishes between the public and private roles undertaken by Official Receivers. *See* Statement of Examiner at 11 (citing Bankruptcy Ordinance (New Version) 1980 139(c) "All provisions in this Ordinance referring to the trustee in a bankruptcy shall, unless otherwise provided by this Ordinance or re-

quired by the context, include the Official Receiver when acting as trustee" and referring to Companies Ordinance (New Version) 1987). It also appears that the Receiver is represented, both here and in Israel, by private counsel rather than by the legal arm of a sovereign entity. The Receiver, himself, acknowledges his personal liability for breaches of his duty of care to NAB shareholders. Being subjected to personal liability is not consistent with sovereignty.

Nor have I heard any evidence that this court's finding the Receiver in violation of the stay would rise to the level of "imperil[ing] relations between governments" or "embarass[ing] the U.S. executive branch in its conduct of foreign relations". *See e.g., Allied Bank Int'l v. Banco Credito Agricola de Cartago,* 757 F.2d 516, 520–21 (2d Cir. 1985); *Texas Trading v. Federal Republic of Nigeria,* 647 F.2d 300, 316 n. 38 (2d Cir. 1981).

### Comity

■ Finally, the Receiver asserts that, even if the stay applies extraterritorially, international comity requires this court to find that the Receiver did not violate the stay. In this regard, the Receiver asserts that being subjected to the automatic stay would have put him in direct conflict with Israeli law. Further, the Receiver asserts that comity should be extended because the filing of the Second involuntary was "a parallel bankruptcy" in aid of this court and in furtherance of harmonizing proceedings and ensuring fairness to all creditors.

■ The standard of comity in the U.S. is set forth in *Hilton v. Guyot,* 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895), as follows:

Comity, in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive and judicial acts of another nation, having due regard both to the international duty and convenience, and to the rights of its own citizens or of other persons who are under the protections of its laws.

*Id.* at 163–64, 16 S.Ct. at 143.

At the hearing, the Receiver argued that comity requires this court to respect and defer to the Israeli court's determination approving the Receiver's Instruction Motion and the filing of the Second Involuntary. The Motion and this ruling, however, focus solely on the Receiver's acts in this case, not on the Israeli court's determination. Consequently, I do not find that comity is an issue to be considered at this point in time. The Receiver, a party in interest in this case who has appeared before the court and has sought various relief from the court as a judgment creditor, unilaterally pursued *ex parte* acts against the Debtor and the estate without advising or obtaining approval from this court. As such, the Receiver has violated the automatic stay. Comity does not require me to respect or defer to the acts of a judgment creditor. This finding does not implicate the determinations made by the Israeli courts.

■ As to the Receiver's specific arguments, I do not find that application of the automatic stay imposed conflicting legal duties upon the Receiver. The Receiver asserts its' acts were required under section 5.5 of the Israeli Bankruptcy Ordinance and by order of the Jerusalem Court.

Section 5.5 of the Israeli Bankruptcy Ordinance provides that an "act of bankruptcy" triggers a three month statute of limitations for the Receiver to file a petition in Israel. Even assuming that the Chapter 11 petition was an "act of bankruptcy" giving rise to the three month statute of limitations, the Receiver had adequate time during which it could have informed this court of its perceived conflicting obligations and sought relief from the stay. If such relief had been granted, the Receiver would have been in compliance with both countries' laws. Certainly, even if such relief had been denied, this court would have been aware, in advance, of the Receiver's intended actions regarding this Debtor.

■ Nor do I find the Receiver's assertion that he was ordered by the Israel Court

to file the Second Involuntary accurate. The Receiver affirmatively sought the Israeli court's instruction. The Instruction Motion was not a thorough or balanced pleading. It did not adequately advise the Israeli court of the Chapter 11 proceeding and the issues and nuances extent before this court. The Jerusalem Court's response was simply to approve the Receiver's intended course of action.

■ Nor do I find that the Receiver's acts were undertaken in aid of this court. Rather, the Receiver's acts were undertaken in secrecy and silence. Upon finding out that the Second Involuntary was filed, the Debtor immediately filed the instant Motion. The Receiver's secrecy continued, however, with respect to the Instruction Motion, a pleading filed just prior to the Second Involuntary. This secrecy continued for nine months until it was revealed in the Receiver's opposition papers dated October 11, 1995. This secrecy is disturbing in view of the events which took place during the nine month period and in which the Receiver actively participated. These events included my appointment of an Examiner with a mandate to, *inter alia*, develop a protocol for harmonizing and coordinating the cross border proceedings; standstill agreements wherein the parties agreed to forbear from commencing new litigations; mediation sessions and Letters of Introduction delivered to the courts of Israel "seeking avenues for the promotion of international cooperation and coordination". The Receiver's acts, rather than aiding this court, made the above events empty. Moreover, these acts have disrupted the orderly conduct of the chapter 11 process and resulted in needless and wasteful expenditures of time and money detrimental to all parties in interest.

For all of the foregoing reasons, this court finds the Receiver in violation of the automatic stay for having filed the Instruction Motion and the Second Involuntary petition against this Debtor. As stated above this decision leaves for another time the issue of sanctions, damages and other acts taken by the Receiver.

The Motion is granted to the extent set forth above. It is so ordered.